UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THOR HALVORSSEN,

    Plaintiff,

 -against-

GLENN R. SIMPSON, PETER FRITSCH,
FRANCISCO D'AGOSTINO-CASADO,
LEOPOLDO A. BETANCOURT-LOPEZ,
PEDRO JOSE TREBBAU-LOPEZ, FRANCISCO
CONVIT-GURUCEAGA,

    Defendants.

Civil Action No. 18-2683 (JMA) (AYS)

**MEMORANDUM OF LAW OF DEFENDANTS BETANCOURT-LOPEZ, TREBBAU-LOPEZ, AND CONVIT-GURUCEAGA IN OPPOSITION TO PLAINTIFF'S MOTION <u>FOR ATERNATIVE SERVICE OF PROCESS</u>**

LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue, 34th Floor
New York, NY 10110
(212) 921-8399
*Attorneys for Defendant Leopoldo Alejandro Betancourt-Lopez*

FOX ROTHSCHILD LLP
2 S. Biscayne Blvd, Suite 2570
Miami, FL 33131
(305) 442-6547
*Attorneys for Defendant Pedro Jose Trebbau-Lopez*

LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
The Chrysler Building
405 Lexington Av enue, 62nd Floor
New York, NY 10174
(212) 822-0161
*Attorneys for Defendant Francisco Convit-Guruceaga*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

FACTS ................................................................................................................................ 2

ARGUMENT ...................................................................................................................... 3

POINT I
PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE SHOULD BE
DENIED BECAUSE PLAINTIFF HAS NOT ATTEMPTED HAGUE SERVICE .......... 3

    A.    Plaintiff's Motion Is Premature Under Federal Rule 4 Because He Has Not Attempted Hague Service ................................................................................. 3

    B.    Under New York Law, Plaintiff Must Serve the Foreign Defendants Through the Hague Convention ........................................................................ 7

    C.    Plaintiff's Excuses for Failing to Attempt Service Under the Hague Convention Are Meritless .................................................................................. 8

POINT II
PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE ON U.S. COUNSEL
IS AN IMPROPER PLOY TO TRY TO CREATE JURISDICTION OVER THE
VENEZUELAN DEFENDANTS ..................................................................................... 12

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.T.N. Industries, Inc. v. Gross*,
  Case No. 14-02743, 2016 WL 362309 (S.D. Tex. Jan. 29, 2016) ............................................12

*Ambriz Trading Corp. v. Uralsib Fin. Corp.*,
  No. 11 CIV. 4420, 2011 WL 5844115 (S.D.N.Y. Nov. 21, 2011) ............................................4

*AMTO, LLC v. Bedford Asset Mgmt., LLC*,
  14 CIV. 9913, 2015 WL 3457452 (S.D.N.Y. June 1, 2015) ......................................................6

*Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*,
  168 F. Supp. 3d 1 (D.D.C. 2016) ........................................................................................6, 14

*Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*,
  817 F. Supp. 326 (E.D.N.Y. 1993) ...........................................................................................7

*Compass Bank v. Katz*,
  287 F.R.D. 392 (S.D. Tex. 2012) ..............................................................................................8

*Cooper-Fry v. Kolket*,
  245 A.D.2d 846 (3rd Dep't 1997) ...........................................................................................12

*Elsevier, Inc. v. Grossman*,
  77 F. Supp. 3d 331 (S.D.N.Y. 2015) .........................................................................................7

*Elsevier, Inc. v. Siew Yee Chew*,
  287 F. Supp. 3d 374 (S.D.N.Y. 2018) ....................................................................................8, 9

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*,
  218 F. Supp. 2d 369 (S.D.N.Y. 2002) .................................................................................7, 13

*Forbes v. Eagleson*,
  Case No. 95 CIV. 7021, 1996 WL 420829 (E.D. Pa. July 23, 1996) .......................................7

*Franchido v. Onay*,
  150 A.D. 2d 518 (2nd Dep't 1989) .........................................................................................12

*Freedom Watch, Inc. v. Org. of Petroleum Exporting Countries (OPEC)*,
  107 F. Supp. 3d 134 (D.D.C. 2015) ........................................................................................14

*Hillary v. Grace*,
  213 A.D. 2d 450 (2nd Dep't 1995) .........................................................................................12

*GLG Life Tech Corp. Sec. Litig.*,
   287 F.R.D. 262 (S.D.N.Y. 2012) ...................................................................................6

*Katz v. Travelers*,
   241 F. Supp. 3d 397 (E.D.N.Y. 2017) ..........................................................................10

*KG Marine, LLC v. Vicem Yat Sanayi Ticaret AS*,
   24 F. Supp. 3d 312 (W.D.N.Y. 2014) .............................................................................5

*Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593
   (S.D.N.Y. 1998) .............................................................................................................7

*Luciano v. Garvey Volkswagfen, Inc.*,
   131 A.D. 2d 253 (3rd Dep't 1987) .................................................................................8

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
   265 F.R.D. 106 (S.D.N.Y. 2010) .........................................................................3, 5, 12

*Morgenthau v. Avion Res., Ltd.*,
   11 N.Y. 3d 383 (N.Y. 2008) .......................................................................................7, 8

*Nucal Foods, Inc. v. Quality Egg, LLC*,
   887 F. Supp. 2d 977 (E.D. Ca. 2012)............................................................................10

*Owen v. Sports Gymnastics Federation of Russia*,
   No. 12 CIV. 0034, 2012 WL 346661 (D.Me. Jan. 31, 2012) .........................................4

*PDVSA US Litig. Trust v. Lukoil Pan Americas LLC*,
   No. 18-20818-CIV (S.D.Fla. Mar. 16, 2018), ECF No. 98 ............................................5

*Regenicin, Inc. v. Lonza Walkersville, Inc.*,
   997 F. Supp. 2d 1304 (N.D. Ga. 2014) .......................................................................5, 6

*Reich v. Betancourt Lopez, et al*,
   Case No. 13 CV 5307 (S.D.N.Y.), ECF Nos. 67 and 68 .............................................10

*S.E.C. v. Lines*,
   No. 07 CIV. 11387, 2009 WL 2431976 (S.D.N.Y. Aug. 7, 2009) ................................4

*S.E.C. v. Lines*,
   No. 07 CIV. 11387 (S.D.N.Y. July 21, 2008), ECF No. 25 ..........................................3

*Thor Halvorssen-Mendoza v. Leopoldo Alejandro Betancourt-Lopez, et al*,
   No. 13-2013-CA-036379-0000-01 (Fla. Cir. Ct.)..........................................................9

*Thor Halvorssen-Mendoza v. Leopoldo Alejandro Betancourt-Lopez, et al*,
   No. 3D16-1816 (Fla. Dist. Ct. App. October 4, 2017) ................................................10

*Triad Energy Corp. v McNell*,
    110 F.R.D. 382 (S.D.N.Y. 1986) (Kram, J.) ........................................................................11

**Other Authorities**

4A C. Wright & A. Miller, Federal Practice & Procedure § 1133 (2018) ....................................4

Fed.R.Civ.P. 4 ............................................................................................................. *passim*

Defendants Leopoldo Alejandro Betancourt-Lopez, Pedro Trebbau-Lopez, and Francisco Convit-Guruceaga (the "Venezuelan Defendants" or the "Foreign Defendants") file this memorandum of law in opposition to Plaintiff Thor Halvorssen's July 23, 2018 motion for alternative service of process on them (the "Motion").

## PRELIMINARY STATEMENT

The Foreign Defendants are citizens of Venezuela. Although Plaintiff recognizes that Venezuela is a party to the Hague Service Convention, he seeks this Court's permission to bypass the internationally agreed upon procedures for service under the Hague Convention, and instead serve the Venezuelan Defendants by emailing the summons and complaint to their counsel in the United States.

Plaintiff's attempt to sidestep international law because he claims that it is inconvenient should be denied. First, Plaintiff's Motion is premature because Plaintiff has not attempted to effect Hague service, but simply anticipates that it would be difficult and time-consuming. Courts routinely deny requests for alternative service under such circumstances.

Second, Plaintiff's Motion should be denied because it is clear from court filings that Plaintiff seeks alternative service for an improper purpose. Specifically, Plaintiff seeks to serve the Venezuelan Defendants' United States counsel as an ill-conceived ploy to establish RICO personal jurisdiction over the Venezuelan defendants by claiming that they have been served inside the United States, in accordance with RICO's nationwide service provisions. Plaintiff's tactic is impermissible under Rule 4 and the RICO statute and should be rejected.

For these reasons, we respectfully submit that this Court should deny Plaintiff's Motion and require Plaintiff to attempt service under the Hague Convention.

## FACTS

Defendants Betancourt, Trebbau, and Convit are citizens of Venezuela, and are alleged to be principals of a Venezuelan business. Plaintiff's Memorandum in Support of Motion for Alternative Service ("Pl. Mem.") at 4; Compl. ¶¶ 2, 69. Plaintiff acknowledges that the United States and Venezuela are signatories to the Hague Convention. Pl. Mem. at 4 n.1.[1] However, Plaintiff does not allege any effort that he has taken to serve any of the Foreign Defendants in Venezuela under the Hague Convention. Instead, he states that he asked the Venezuelan Defendants' U.S. counsel for their clients' home addresses in Venezuela, that counsel declined to provide that information, and, therefore, he made no effort to serve the Foreign Defendants in Venezuela. Pl. Mem. at 4.

In his Motion and supporting Declaration, Plaintiff does not dispute that he knows the office address of Defendants Betancourt and Trebbau's business in Venezuela. Indeed, he identified their business address in his Complaint. Compl. ¶ 69. He does not assert that he has made any effort to serve them at that known address. Since the filing of the Motion, Counsel for Defendant Convit has provided Plaintiff's counsel with Defendant Convit's address in Venezuela. Declaration of Erika Levin in Support of Defendants' Joint Opposition to Plaintiff's Motion for Alternative Service ("Levin Decl.") at ¶ 3. Defendants have also provided other Venezuelan identification information that Plaintiff can provide to the Venezuelan Central Authority in support of his required request for service upon Defendants pursuant to the Hague Convention.

---

[1] *See* https://www.hcch.net/en/instruments/conventions/status-table/?cid=17; 20 UST 361, TIAS No. 6638.

# ARGUMENT

## POINT I

### PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE SHOULD BE DENIED BECAUSE PLAINTIFF HAS NOT ATTEMPTED HAGUE SERVICE

Plaintiff's Motion for alternative service under Federal Rule 4(f)(3) should be denied as premature because Plaintiff has failed to make the requisite showing that he has attempted Hague service.

### A. Plaintiff's Motion Is Premature Under Federal Rule 4 Because He Has Not Attempted Hague Service

Through his Motion, Plaintiff seeks to ignore the process for international service established by the Hague Service Convention and recognized by Rule 4(f)(1) because it is inconvenient to him. However, courts within this Circuit routinely require, before permitting alternate service, that plaintiffs "show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010) (Leisure, J.) (citation and punctuation omitted). This requirement, although not expressly provided by Rule 4(f)(3), "is necessary in order to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts." *Id*. at 115-16 (citation and punctuation omitted).

This requirement is particularly compelling where the Hague Convention applies. Where, as here, defendants are located in nations bound by the Hague Convention, service must be attempted pursuant to its terms. *See S.E.C. v. Lines*, No. 07 CIV. 11387 (S.D.N.Y. July 21, 2008) (Cote, J.), ECF No. 25 at 1 (recognizing that "[u]se of the Hague Service Convention's procedures is mandatory when serving a defendant residing in a foreign country that is a signatory to the Convention" and denying SEC's motion for alternative service prior to efforts at

Hague Service);² *Ambriz Trading Corp. v. Uralsib Fin. Corp.*, No. 11 CIV. 4420, 2011 WL 5844115, at *5 (S.D.N.Y. Nov. 21, 2011) (Scheindlin, J.) ("Service on a defendant in a foreign country that is a signatory to the Hague Convention must be attempted according to the terms of the Hague Convention." (punctuation and citation omitted)); *Owen v. Sports Gymnastics Federation of Russia*, No. 12 CIV. 0034, 2012 WL 346661, at *2 (D.Me. Jan. 31, 2012) (denying motion for alternate service and noting: "Obviously, this Court would normally expect that service would be accomplished in accordance with the Hague Convention."). Permitting alternative service where Plaintiff has made no effort to comply with the Hague Convention would contravene the spirit of Rule 4.³

Here, Plaintiff admits that he has not attempted to comply with the Hague Convention, even though he filed the Complaint three months ago. Indeed, Plaintiff does not purport even to have taken the initial step, required by Venezuela for Hague service upon its citizens, of translating the Complaint and supporting documents into Spanish.⁴ This failure is significant and should not be excused. *Owen*, 2012 WL 346661, at *2 ("[I]t is not clear to me that [plaintiff's] suggestion that he can serve process in Russia without translating the complaint and summons documents into Russian is indeed service that is 'not prohibited by international agreement' as

---

² *See also S.E.C. v. Lines*, No. 07 CIV. 11387, 2009 WL 2431976, at *1-2 (S.D.N.Y. Aug. 7, 2009) (granting motion for alternative service only after SEC had unsuccessfully attempted Hague service).

³ Failing to comply with the treaty also has broader due process implications and may result in a failure of a foreign court to recognize and enforce an American judgment. *See* 4A C. WRIGHT & A. MILLER, Federal Practice & Procedure § 1133 (2018) ("[A] foreign country is more likely to honor or enforce a judgment rendered in the United States if original service is made in a fashion familiar to the country in which enforcement is sought and consonant with its notions of fairness.").

⁴ *See* https://www.hcch.net/en/instruments/convention/status-table/notifications/?csid=429&disp=resdn.

4

required under Rule 4(f)(3)."); *see also, e.g., Regenicin, Inc. v. Lonza Walkersville, Inc.*, 997 F. Supp. 2d 1304, 1315-16 (N.D. Ga. 2014) (requiring Plaintiff to translate the pleading and exhibits for service under the Hague Convention, even if burdensome).

Plaintiff's stated belief that the usual international process is inefficient and unlikely to succeed, in the absence of any attempt, does not justify ignoring international law and burdening the Court with a request for alternate service. In virtually any case, Hague service will be more burdensome and time-consuming than service by email. If general concerns about effectiveness and delay were a sufficient basis for Rule 4(f)(3) service, then few plaintiffs would attempt Hague service, and "alternate" service would become the norm in international cases. Courts routinely require that plaintiffs make reasonable efforts at Hague service, notwithstanding plaintiffs' expressed skepticism about practicability. *See, e.g., Madu, Edozie & Madu, P.C.*, 265 F.R.D. at 112, 116 (concluding plaintiffs failed the "threshold requirement of reasonably attempting to effect service on defendants," where plaintiffs' request for alternate service was based on unsupported statements that their various efforts to serve defendants in Uganda and Ghana had failed, and that a process serving agency had informed them that no individuals had ever been served successfully using letters rogatory in Nigeria, Uganda, or Ghana); Order at 3-4, *PDVSA US Litig. Trust v. Lukoil Pan Americas LLC*, No. 18-20818-CIV (S.D.Fla. Mar. 16, 2018), ECF No. 98 (denying request for alternate service where plaintiff had not made a sufficient effort to serve defendants in Venezuela and Switzerland by traditional methods); *KG Marine, LLC v. Vicem Yat Sanayi Ticaret AS*, 24 F. Supp. 3d 312 (W.D.N.Y. 2014) (Wolford, J.)

(rejecting Rule 4(f)(3) application because of plaintiff's failure to make reasonable attempt to serve process pursuant to the Hague Convention).[5]

The cases cited by Plaintiff for the proposition that he is not required to attempt service under the Hague Convention do not support his Motion. *See AMTO, LLC v. Bedford Asset Mgmt., LLC*, 14 CIV. 9913, 2015 WL 3457452, at *4-5 (S.D.N.Y. June 1, 2015) (Karas, J.) (permitting alternate service of third-party defendant who resided in Russia in light of Russia's "suspension of judicial cooperation with the United States"); *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.,* 168 F. Supp. 3d 1, 13 (D.D.C. 2016) (recognizing that plaintiff had attempted Hague service prior to court's grant of alternative service motion); *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (Gorenstein, J.) ("This Court concurs that there will undoubtedly be many instances where significant efforts to make service under the Hague Convention should be required by a court before alternative service is ordered.").

Because Plaintiff has made no effort to comply with the Hague Convention, his Motion should be denied under Rule 4(f) on this record.

---

[5] Plaintiff also contends that alternative service should be allowed, despite the requirements of the Treaty, because otherwise, the case against the Venezuelan Defendants will be "decouple[d]" from the case against Defendants Simpson, Fritsch and D'Agostino, who have not challenged the domestic service. Pl. Mem. at 6. As the *Regenicin* court noted in response to the plaintiff's arguments about the burden imposed by the Hague Convention, Plaintiff "is the master of its action. If it wishes to serve a [foreign defendant] and hale it into a United States court, it must comply with the relevant treaty." 997 F. Supp. 2d at 1315-16. Plaintiff chose to include the Foreign Defendants and must deal with the consequences of that decision.

### B. Under New York Law, Plaintiff Must Serve the Foreign Defendants Through the Hague Convention

Plaintiff's Complaint asserts a single RICO conspiracy claim. Because the RICO statute authorizes nationwide but not worldwide service of process, "'[p]laintiffs asserting RICO claims against foreign defendants must rely on the long-arm statute of the state in which they filed suit.'" *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 (S.D.N.Y. 2015) (Failla, J.) (quoting *Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998)).[6]

As a result, there is authority suggesting that in civil RICO cases against foreign defendants, "[p]laintiffs must therefore serve process and attempt to establish personal jurisdiction under state law." *Forbes v. Eagleson*, Case No. 95 CIV. 7021, 1996 WL 420829 at *5 (E.D. Pa. July 23, 1996); s*ee also Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.,* 817 F. Supp. 326, 332 (E.D.N.Y. 1993) (Nickerson, J.) (concluding that the RICO statute does not provide for extraterritorial service upon persons outside the United States, but "plaintiff may look to the laws of the state in which the district court sits").

As the New York Court of Appeals has explained, with respect to service on a foreign defendant:

> Where there exists a treaty requiring a specific form of service of process such as the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (Hague Service Convention), that treaty, of course, is the supreme law of the land and its service requirements are mandatory (*see* U.S. Const., art VI, cl. 2; *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, [1988]).[7]

---

[6] *See also First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F.Supp.2d 369, 392 (S.D.N.Y. 2002) (Kaplan, J.).

[7] In *Morgenthau*, 11 N.Y. 3d at 390, service through the Hague Convention was not required because Brazil was not a signatory to that convention at that time.

*Morgenthau v. Avion Res., Ltd.*, 11 N.Y.3d 383, 390 (N.Y. 2008). *See also Luciano v. Garvey Volkswagfen, Inc.*, 131 A.D. 2d 253, 255 (3rd Dep't 1987) ("The Convention indisputably provides the mandatory methods of service once service abroad is necessary or appropriate. Accordingly, an attempt to serve documents abroad must comply with the Convention." (citation omitted)).

Thus, New York law also supports the conclusion that Plaintiff must attempt to serve the Foreign Defendants pursuant to the Hague Convention before seeking expedited service.

### C. Plaintiff's Excuses for Failing to Attempt Service Under the Hague Convention Are Meritless

Plaintiff offers two excuses for his failure to attempt service under the Hague Convention. Both are meritless.

First, Plaintiff contends that to serve the Venezuelan Defendants, he needs their *home* addresses and that undersigned counsel's refusal to provide each Defendant's *home* address makes the Hague Convention inapplicable. Pl. Mem. at 4. However, nothing in the Hague Convention suggests that a plaintiff must serve a defendant at a *home* address, rather than a *work* address; nor does Plaintiff cite any authority for that proposition. To the contrary, for example, in *Compass Bank v. Katz*, 287 F.R.D. 392, 395–96 (S.D. Tex. 2012), the court denied plaintiff's request for alternative service, concluding that defendants' address was not "unknown" and Plaintiff was required to attempt Hague service, where, *inter alia*, defendants maintained an active website for their business, which identified a physical address in Rosarito Beach, Mexico, but plaintiff had not attempted to serve defendants at that physical location.

Plaintiff's reliance on *Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374 (S.D.N.Y. 2018) (Gorenstein, J.) is misplaced. In that case, the Chinese defendants, who were accused of selling counterfeit goods through eBay, were initially unknown to the plaintiffs because they

were using fictitious names and addresses to conceal their identities. *Id.* at 376. After subpoenaing eBay, Plaintiff learned that the defendants used "'multiple and ever-changing physical addresses,'" and some of the address information was incomplete. *Id*. at 376-77. As the court explained, the incomplete and changing physical address information regarding defendants' "storefronts" made it impossible for plaintiff to identify defendants' true locations. *Id.*

Plaintiff has not made, and cannot plausibly make, a claim that the Venezuelan Defendants have provided false or incomplete addresses, as in *Elsevier*. As to Defendants Betancourt and Trebbau, Plaintiff alleges that the Venezuelan Defendants are principals of a Venezuelan company called Derwick, and concedes that he knows their business address, which is publicly available on the Derwick Associates website, and which Plaintiff cited in paragraph 69 of his Complaint. *See also* www.derwick.com/contacto.html. With respect to Mr. Convit, because his address is not available on the internet, contemporaneously with the serving of this response, counsel for Mr. Convit has provided Plaintiff's counsel with Mr. Convit's address in Venezuela. Levin Decl. at ¶ 3.

Further, Plaintiff is well aware of the extensive, recent history of prior litigation in New York and Florida in which Defendants Betancourt and Trebbau produced information and documentation about their presence in Venezuela that belies any suggestion that the Venezuelan Defendants are attempting to hide. Prior to commencing this litigation, Plaintiff sued Messrs. Betancourt and Trebbau, and corporate affiliates of Derwick, in Florida state court. *Thor Halvorssen-Mendoza v. Leopoldo Alejandro Betancourt-Lopez, et al*, No. 13-2013-CA-036379-0000-01 (Fla. Cir. Ct.).[8] Plaintiff alleged that he had conducted an investigation of Derwick's

---

[8] Docket sheet and filings are available at https://www2.miami-dadeclerk.com/ocs/.

business in Venezuela before making accusations against Defendants about the manner in which they operated their business. *See* Corrected Amended Complaint, electronically filed on March 4, 2014.

In the Florida case, Mr. Trebbau and Derwick challenged Plaintiff's alleged service and claim of personal jurisdiction. At a July 16, 2015 evidentiary hearing in the Florida case, Mr. Trebbau's wife testified that Mr. Trebbau and Mr. Betancourt were officers of Derwick and that Derwick's offices were in Caracas, Venezuela. Mrs. Trebbau also provided at that evidentiary hearing a copy of her husband's Venezuelan national identity card and Venezuelan driver's license. *See* August 25, 2015 Electronically Filed Notice of Filing of July 16, 2015 Hearing Transcript, at 51-54. [9]

In addition, Messrs. Trebbau and Betancourt submitted their Venezuelan voter registration cards, reflecting their national identity numbers, as well as their Venezuelan drivers' licenses, to the court in their challenge to personal jurisdiction in *Reich v. Betancourt Lopez, et al.*, Case No. 13 CV 5307 (S.D.N.Y.), ECF No. 67, Ex. A & C, No. 68, Ex. A & C.[10]

Contemporaneously with the filing of this response, counsel for Mr. Convit has provided Plaintiff's counsel with a copy of his Venezuelan National Identity Card and Venezuelan driver's license. Levin Decl. at ¶ 4. Accordingly, Plaintiff has an address and other identification

---

[9] Plaintiff never claimed to have served Mr. Betancourt before the case was dismissed as to Mr. Trebbau and Derwick. The dismissal was affirmed by the Florida Court of Appeal. Opinion Affirming Dismissal, *Thor Halvorssen-Mendoza v. Leopoldo Alejandro Betancourt-Lopez, et al*, No. 3D16-1816 (Fla. Dist. Ct. App. October 4, 2017).

[10] The Court may take judicial notice of these related proceedings. *See e.g. Katz v. Travelers*, 241 F. Supp. 3d 397, 406 (E.D.N.Y. 2017) (Spatt, J.) (generally discussing judicial notice of records from related proceedings); *Nucal Foods, Inc. v. Quality Egg, LLC*, 887 F. Supp. 2d 977, 984 (E.D. Ca. 2012) (taking judicial notice of documents filed in related state court proceeding in evaluating challenge to personal jurisdiction).

information that he can provide to the Venezuelan Central Authority in support of his request for service of each of the Venezuelan Defendants pursuant to the Hague Convention.[11]

In sum, the Foreign Defendants are not hiding from the Court or this Plaintiff. Rather, they are simply insisting on their right, as Venezuelans, to be served with process in the manner to which the United States and Venezuela have agreed under the Hague Service Convention. Plaintiff has the information necessary to contact the Venezuelan Central Authority to initiate service of the Venezuelan Defendants consistent with the Hague Convention, and Plaintiff should be required to do so.

Second, Plaintiff claims that he should not be required to serve the Venezuelan Defendants through the Hague Convention because it is "impossible." Pl. Mem. at 5. As discussed above, Courts typically permit alternative service *only* after a plaintiff has made real efforts to formally serve the defendants. Plaintiffs' argument that the Defendants "enjoy" the protection of the Venezuelan government, which would make service impracticable, does not and cannot meet the standard required to meet their burden. This Court should not accept Plaintiff's counsel's unproven allegations that "no office of the Venezuelan government works the way it should, and powerful people can work their will," accompanied by photographs of someone with a weapon, coupled with Plaintiff's unsupported (and inaccurate) inference that

---

[11] Contrary to Plaintiff's accusation that the undersigned counsel were "very coy" in declining to provide Plaintiff with Defendants' personal addresses in Venezuela, Pl. Mem. at 4, Plaintiff is well aware that giving out such information poses security concerns. Mr. Trebbau's wife explained this security concern in her testimony in the Florida action brought by Plaintiff. *See* Notice of Filing of July 16, 2015, Hearing Transcript at 45-46. Moreover, Defendants do not have a duty to keep a putative plaintiff abreast of their whereabouts; rather, it is plaintiff's burden to prove that defendants made a calculated effort to prevent plaintiff from learning of their true whereabouts – a standard that Plaintiff plainly cannot meet. *See e.g. Triad Energy Corp. v McNell*, 110 F.R.D. 382, 386 (S.D.N.Y. 1986) (Kram, J.) (voiding default judgment based on improper service).

11

Derwick is guarded by Venezuela's "secret police," Pl. Mem. Ex. A., as a basis to ignore the obligations of this Treaty. *See, e.g., Madu, Edozie & Madu, P.C.*, 265 F.R.D. at 116-18.[12]

Further, Plaintiff's claim that service through the Hague Convention in Venezuela cannot succeed is simply false. In *A.T.N. Industries, Inc. v. Gross*, Case No. 14-02743, 2016 WL 362309 (S.D. Tex. Jan. 29, 2016), Plaintiff was able to effectuate service through the Venezuelan Central Authority, as required by the Treaty. Indeed, Plaintiff could have read the affidavit of the attorney in that case who effectuated service through the Hague Convention in Venezuela to become educated in how to proceed. *See* Case No. 4:14-cv-02743, ECF No. 108-5.

## POINT II

## PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE ON U.S. COUNSEL IS AN IMPROPER PLOY TO TRY TO CREATE JURISDICTION OVER THE VENEZUELAN DEFENDANTS

Plaintiff's Motion also should be denied because Plaintiff improperly seeks alternative service on U.S. counsel as a ploy to gain personal jurisdiction over the Venezuelan Defendants. Plaintiff's transparent tactic defies Rule 4 and the RICO statute.

On June 21, 2018, Mr. Betancourt filed a letter with Judge Azrack regarding his anticipated Rule 12(b) motions to dismiss the Complaint, including for lack of personal jurisdiction. ECF No. 37. In his June 28, 2018, responsive letter, Plaintiff identified the RICO statute as the basis of his claim of personal jurisdiction over Mr. Betancourt. ECF No. 42 at 1-2.

---

[12] *See also Cooper-Fry v. Kolket*, 245 A.D.2d 846, 847 (3rd Dep't 1997) (explaining that a counsel's conclusory statements are insufficient to establish impracticability of traditional service); *Hillary v. Grace*, 213 A.D. 2d 450, 451-52 (2nd Dep't 1995) (finding that record failed to establish that service was impracticable); *Franchido v. Onay*, 150 A.D. 2d 518, 519-20 (2nd Dep't 1989) (Plaintiff's attorney's conclusory allegations and reference to handwritten notes by process server was an insufficient evidentiary record to establish that formal service was impracticable.).

On July 5, Mr. Betancourt replied, explaining that while the RICO statute provides for *nationwide* personal jurisdiction, it does not provide *international* personal jurisdiction. ECF No. 47 at 1. Foreign defendants are not subject to jurisdiction under the RICO statute. Rather, "'Plaintiffs asserting RICO claims against foreign defendants must rely on the long-arm statute of the state in which they filed suit,' and the Court 'must focus on the defendants' contacts with the forum state, not the United States as a whole.'" *Id*. (quoting *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 392 (S.D.N.Y. 2002) (Kaplan, J.) (punctuation and citation omitted)).

On July 6, 2018, Plaintiff filed an additional responsive letter to Judge Azrack that revealed his true end-game in seeking alternative service: to claim personal jurisdiction over the Foreign Defendants based on serving their counsel in the United States. Specifically, Plaintiff argued that RICO's nationwide service-of-process provision applies to foreigners served *in the United States*, as opposed to foreign defendants (like the foreign defendants in *Brickellbush*) who were served *abroad*. ECF No. 48 at 1. Plaintiff went on to claim that pursuant to this Court's alternate service order (which the Court has since vacated), Plaintiff had served Mr. Betancourt *inside* the United States:

> . . . Betancourt was served in the U.S. on his lawyer, Mr. Wohl, pursuant to an order of Magistrate Judge Shields. Court Doc. 33. Accordingly, there is no jurisdictional problem, and there is no need to use New York's long-arm statute. That would only come into play if Betancourt had been served abroad, beyond the reach of 18 U.S.C. § 1965(d).

*Id*. (footnote omitted). It is clear from Plaintiff's letter that he intends to use substitute service to try to establish personal jurisdiction over Defendants Betancourt, Trebbau, and Convit that would be lacking if he served them in Venezuela by traditional means, such as the Hague Convention.

13

It is equally clear that Plaintiff's gambit is impermissible under Rule 4 and the RICO statute. Plaintiff seeks alternative service under Rule 4(f)(3), which explicitly relates to "Serving an Individual in a Foreign Country." Rule 4(f) does not authorize alternative service *inside* the United States. Rather, the Rule provides:

> Unless federal law provides otherwise, an individual . . . may be served *at a place not within any judicial district of the United States* . . . by other means not prohibited by international agreement, as the court orders."

Fed. R. Civ. P. 4(f)(3) (emphasis added). Thus, if the service sought by Plaintiff would constitute service *inside the United States* – as the Plaintiff has contended it would (*see* ECF No. 48) – then such service is not permitted under the plain terms of Rule 4(f)(3). On the other hand, if alternate service is permissible under Rule 4(f)(3), then the service by definition must be "at a place not within any judicial district of the United States."

Plaintiff cannot have it both ways: he cannot seek alternative service *outside* the United States under Rule 4(f)(3), and then evade the limits of RICO personal jurisdiction by claiming that the alternative service constitutes service *inside* the United States for purposes of the RICO statute.[13] Having asserted that service of defendants' United States counsel constitutes service *inside* the United States, Plaintiff should not be permitted to serve defense counsel under Rule 4(f)(3).

---

[13] The weight of authority is that alternate service on U.S. counsel constitutes service *outside* the U.S. *See, e.g., Bazarian*, 168 F. Supp. 3d at 14 (after plaintiff had unsuccessfully attempted service by traditional means, concluding that alternate service on a foreign defendant through its United States counsel may be permissible under Rule 4(f)(3), because domestic counsel serves as a means to "transmit the service," with service being completed abroad upon transmittal to the defendant). There is, however, contrary authority suggesting that such service would be *inside* the U.S. and thus is not authorized by Rule 4(f)(3). *See Freedom Watch, Inc. v. Org. of Petroleum Exporting Countries (OPEC)*, 107 F. Supp. 3d 134, 137-39 (D.D.C. 2015) (declining to authorize alternate service on a foreign defendant under Rule 4(f)(3) via its United States counsel because Rule 4(f) "provides no authorization for service occurring within the United States," and because the defendant in that case entered into an international agreement accepting service only through certain "diplomatic channels").

Because Plaintiff has failed to establish that he has attempted to comply with the Hague Convention, and instead seeks alternative service for an improper purpose, his Motion should be denied.

## CONCLUSION

For the foregoing reasons, Defendants Betancourt, Trebbau, and Convit respectfully submit that Plaintiff's Motion for alternative service should be denied.

Dated: New York, New York
August 13, 2018

LANKLER SIFFERT & WOHL LLP

By: */s/ Frank H. Wohl*
    Frank H. Wohl (fwohl@lswlaw.com)
500 Fifth Avenue, 34th Floor
New York, NY 10110
(212) 921-8399
*Attorneys for Defendant Leopoldo Alejandro Betancourt-Lopez*

FOX ROTHSCHILD LLP

By: */s/ Joseph A. DeMaria*
    Joseph A. DeMaria (jdemaria@foxrothschild.com)
2 S. Biscayne Blvd., Suite 2750
Miami, FL 33131
(305) 442-6547
*Attorneys for Defendant Pedro Trebbau-Lopez*

LEWIS BAACH KAUFMANN MIDDLEMISS PLLC

By: */s/ Erika Levin*
    Erika Levin (erika.levin@lbkmlaw.com)
The Chrysler Building
405 Lexington Avenue, 62nd Floor
New York, NY 10174
(212) 822-0161
*Attorneys for Defendant Francisco Convit-Guruceaga*