U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOR HALVORSSEN ) | |
| ) | |
| v. ) | |
| ) | Case No. 18-cv-1683 |
| GLENN R. SIMPSON ) | |
| PETER FRITSCH ) | |
| FRANCISCO D'AGOSTINO, ) | |
| LEOPOLDO ALEJANDRO BETANCOURT- ) | |
| LOPEZ, ) | REPLY MEMORANDUM |
| PEDRO JOSE TREBBAU-LOPEZ, ) | IN SUPPORT OF MOTION FOR |
| FRANCISCO CONVIT-GURUCEAGA, ) | ALTERNATIVE SERVICE |

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
ALTERNATIVE SERVICE OF PROCESS ON DEFENDANTS
PEDRO JOSE TREBBAU-LOPEZ, FRANCISCO CONVIT-GURUCEAGA
AND LEOPOLDO ALEJANDRO BETANCOURT-LOPEZ

Plaintiff Thor Halvorssen ("Plaintiff" or "Halvorssen"), by counsel, hereby submits his

Reply Memorandum in support of his Motion for leave to serve these three Venezuelan

Defendants by email on their attorneys of record, pursuant to Fed. R. Civ. P. 4(f)(3) ("the

Motion"). For the reasons discussed below and in Halvorssen's Opening Brief, his Motion

should be granted.

# TABLE OF CONTENTS

Table of Authorities……………………………………………………………….…3

**Argument Section:**

Introduction……………………………………………………………………………..4

The Hague Convention Does Not Apply As To Betancourt
And Trebbau As Their Addresses Are Unknown…………………………………….....5

The Motion For Alternative Service Has No Bearing
On Personal Jurisdiction Under RICO…..…………………………………………………8

Conclusion…..…..…………………………………………………………………….10

# TABLE OF AUTHORITIES

*Bank v. Katz,* 287 F.R.D. 392 (S.D. Tex. 2012)……………………………………………6

*BMW of North America LLC v. M/V Courage,* 254 F. Supp. 3d 591 (S.D.N.Y. 2017)….…..8

*Burda Media, Inc., v. Viertel,* 417 F.3d 292 (2d Cir. 2005)…………………….………...5

*CGC Holding Co., LLC v. Hutchens,* 824 F. Supp. 2d 1193 (D. Colo.)……………….....8

*Conlogue v. Hamilton,* 1:16-CV-296, 2017 WL 5339895 (D. Maine Nov. 13, 2017)………………7

*Fendi Adele, S.r.l. v. 1n1qualitybag.com.,* 16-CIV-60113,
2016 WL 8710784 (S.D. Fla. March 28, 2016)……………………………………….....5

*Flag Co. v. Maynard,* 376 F. Supp. 2d 849 (N.D. Ill. 2005)…………………………….....8

*In GLG Life Tech Corp. Securities Lit.,* 287 F.R.D. 262 (S.D.N.Y. 2012)…………………..6

*In re U.S. Foodservice Inc. Pricing Lit.,*, 3:06-1657, 2009 WL 5064468
(D. Conn. Dec. 15, 2009)………………………………………………………………8

*Javier H. v. Garcia-Botello,* 217 F.R.D. 308 (W.D.N.Y. 2003)……………………………..4

*Prediction Co. LLC v. Rejgarhia,* 09 Civ. 7459,
2010 WL 1050307 (S.D.N.Y. March 22, 2010)………………………………………...5

*United States v. Lebanese Canadian Bank SAL,* 285 F.R.D. 262 (S.D.N.Y. 2012)………….5

*Western Supreme Budda Assn. v. Oasis World Peace and Health Foundation,*
08–CV–1374, 2011 WL 856378 (N.D.N.Y. March 9, 2011)………………………….....6

<u>Rules, Statutes, and Treatises</u>

4B Charles Alan Wright and Arthur R. Miller, FED. PRAC. & PRO. (4th Ed. 2018)……...9

18 U.S.C. §1965(d)……………………………………………………………………..8

Fed. R. Civ. P. 4…………………………………………………………......…*passim*

Hague Service Convention Provision……………………………………………….*passim*

Michael J. Leizerman, *Litigating Truck Accident Cases,* §18:4 (Nov. 2017 update)…….….6

I.      INTRODUCTION

The Defendants' Memorandum opposing the Motion ("Response at _") makes three basic points.  First, Halvorssen must be required to try and serve the Venezuelans through the Hague Convention even though he does not have, and cannot obtain, their addressees.  Response at 8-9.  Second, allowing alternative service automatically means the Court obtains personal jurisdiction over them which is otherwise unavailable under RICO. *Id.* at 12-14.  And third, they are not trying to evade service.  *Id.* at 11.  All of these arguments are wrong.

One might have expected defendants to provide their home addresses in response to this Motion.  Only Convit did so.  And this was not done in good faith.  On July 23, 2018, the United States brought criminal charges against him for money laundering.[1]  He omits to inform the Court of this fact, and further omits to acknowledge his status as a fugitive.  He remains out of the country and has not surrendered.  It is extremely unlikely he is living openly at his home address, from which he could be arrested by Venezuelan authorities and extradited.  And even if he were there, anyone approaching the residence might well be on a suicide mission.  This is made abundantly clear in the portion of the Criminal Complaint detailing a meeting Convit held with his business associates.

> Convit had a handgun on the table.  Next to Convit was a German Shepard with a shock collar.  Convit held a remote for the collar, and commented that he could not always control the dog.  The meeting took place at Convit's office with numerous security guards; according to the CS [confidential source], the mood was one of intimidation by Convit.  (*Id.* at ¶52.)

Under the circumstances, Convit is in no position to expect this Court to extend him the courtesy of personal service through the Hague Convention.  Fugitives can be served by whatever means is practical, even if they are aliens.  *See, e.g., Javier H. v. Garcia-Botello,* 217

---

[1] *United States v. Francisco Convit Guruceaga et al.,* 18-MJ-3119 (S.D. Fl.).  Court Doc. 3.  He was subsequently indicted for the same crimes on August 16, 2018.  Court Doc. 19.

F.R.D. 308, 309 (W.D.N.Y. 2003)(allowing service on a Mexican national by publication in a newspaper).

Moreover, the Second Circuit has held "the Hague Convention should be read together with Rule 4, which stresses actual notice not strict formalism." *Burda Media, Inc., v. Viertel,* 417 F.3d 292, 301 (2d Cir. 2005). Thus, alternative service should be allowed because, as the Opening Brief makes clear, service of process in Venezuela will not occur. And as Halvorssen's Supplemental Declaration establishes, he has undertaken considerable efforts and personal expense to locate the Defendants in Venezuela—all unsuccessfully. Ex C. No more is required to obtain alternative service pursuant to Rule 4(f). *United States v. Lebanese Canadian Bank SAL,* 285 F.R.D. 262, 267 (S.D.N.Y. 2012)(noting that district courts in the Second Circuit only require that a plaintiff "reasonably attempted to effect service on the defendant").

## II. THE HAGUE CONVENTION DOES NOT APPLY AS TO BETANCOURT AND TREBBAU AS THEIR ADDRESSES ARE UNKNOWN

As the Opening Brief argued, the Hague Convention does not apply if the defendants' address is not known. *See* Opening Br. at 4 (noting that Hague Convention only applies if the address "of the person to be served with the document is known"). The Response contends Halvorssen has not been diligent in trying to locate them. But Ex. C debunks that notion. A litigant's declaration demonstrating legitimate efforts to find the address is generally enough to obtain alternative service. *See, e.g., Prediction Co. LLC v. Rejgarhia,* 09 Civ. 7459, 2010 WL 1050307, at *2, n.9 (S.D.N.Y. March 22, 2010)(noting diligence based on counsel's declaration); *Fendi Adele, S.r.l. v. 1n1qualitybag.com.,* 16-CIV-60113, 2016 WL 8710784, at *1 (S.D. Fla. March 28, 2016)(noting diligence based upon "plaintiff's representation that they attempted to verify defendant's address to no avail"). The argument that Halvorssen "has not attempted Hague service" (Response at 3-6), is very misleading. He certainly has tried to get the addresses

5

and initiate the process. And it would help if Betancourt and Trebbau would provide their addresses. It is true they are not obliged to do so, but they should not be rewarded for being coy.

The Response at 9 also asserts that service should be attempted at Derwick's business address. This is not adequate for the Hague Convention. *See, e.g., Western Supreme Budda Assn. v. Oasis World Peace and Health Foundation,* 08–CV–1374, 2011 WL 856378, at *1, n.3 (N.D.N.Y. March 9, 2011)(allowing alternative service because "defendant's residential address is unknown pursuant to Article I of the Convention, it does not apply"); *In GLG Life Tech Corp. Securities Lit.,* 287 F.R.D. 262, 264 (S.D.N.Y. 2012)(permitting alternative service on Canadian citizen because obtaining his "residential address" would have cost plaintiff $5,000 for a private investigator and his lawyers refused to provide it); *accord,* Michael J. Leizerman, *Litigating Truck Accident Cases,* §18:4 (Nov. 2017 update)("The number one reason, by far, that Hague requests are not executed is an improper or an incomplete address… It is crucial to provide a pristine address… Litigants may have to hire a local detective to confirm or investigate an address").

The Response at 8 cites *Compass Bank v. Katz,* 287 F.R.D. 392, 395-96 (S.D. Tex. 2012), for the proposition that a "work address" is sufficient for service under the Hague Convention. But in that case the Court believed service could have been effected there. Not so here. The Response gives no indication Defendants actually work at the Derwick office (Halvorssen's first declaration says they do not, ¶2) or that the armed guards which surround it will admit a process server (*Id.* at ¶3, stating that the office is "guarded by heavily-armed men who work for Venezuela's secret police."). So, the Response fails to show service in Venezuela can be accomplished.

Defendants have also proffered the declaration of Kelvin Vivas, who Halvorssen identified as an armed security guard for Betancourt in his first declaration. Ex. A, ¶5. Mr. Vivas admits he was Betancourt's armed bodyguard. Vivas Declaration, ¶1. He denies he carried "machine guns" while on duty. *Id.* at ¶3. Notably, he does not deny carrying semi-automatic weapons while working for Betancourt or that the private ownership of firearms is illegal in Venezuela.[2]

The Response also points out that there has been prior litigation between the parties in Florida. *See* Response at 9. If Halvorssen had their addresses, he would have served them in Venezuela in that case. He did not do so and does not have their addresses now.[3] Nevertheless, the Venezuelan defendants make the stunning assertion that "they are not hiding from the Court or this Plaintiff." Response at 11. If refusing to provide their addresses even discreetly to Halvorssen's lawyer is not "hiding," then Webster's Dictionary needs to revise its definition.[4] Trebbau and Betancourt add that disclosing their addresses "poses security concerns." Response at 11, n.11. But if this is true, then why did they not provide their addresses to Halvorssen's lawyer and request it be maintained discreetly, as Convit did?

---

[2] "[S]emi-automatic handguns do not need to be cocked between shots and can fire multiple rounds very rapidly." *Conlogue v. Hamilton,* 1:16-CV-296, 2017 WL 5339895, at *3 (D. Maine Nov. 13, 2017).

[3] Trebbau produced his Venezuelan national identity card and Venezuelan driver's license in that proceeding. Response at p. 10. But neither of these documents contained his address. This is confirmed by Halvorssen's Supplemental Declaration. It is also confirmed by Convit's production of his Venezuelan identity card and driver's license, which Convit's lawyer produced to Halvorssen's lawyer but did not file. These documents do not bear Convit's address. (Halvorssen will provide them to the Court if requested.)

[4] "Hide" defined, *inter alia,* as "to conceal for shelter or protection." Webster's Ninth New Collegiate Dictionary (1988).

III. THE MOTION FOR ALTERNATIVE SERVICE HAS NO BEARING ON PERSONAL JURISDICTION UNDER RICO

The Response contends that granting alternative service pursuant to Rule 4(f), which applies to service abroad, would give RICO extraterritorial reach. *Id* at 12-15. While RICO has a "nationwide" service of process provision (*see* 18 U.S.C. §1965(d), allowing service "in any judicial district in which such person resides, is found, has an agent…"), service can also be effected abroad pursuant to the federal long-arm statute, Rule 4(k)(2). "This Rule, which is commonly known as the federal long-arm statute, permits federal courts to exercise personal jurisdiction over a defendant that lacks contacts with any single state if the complaint alleges federal claims and the defendant maintains sufficient contacts with the United States as a whole." *BMW of North America LLC v. M/V Courage,* 254 F. Supp. 3d 591, 598-99 (S.D.N.Y. 2017). The federal long-arm statute has been used in RICO cases to permit service of process and jurisdiction over foreigners. *See, e.g., Flag Co. v. Maynard,* 376 F. Supp. 2d 849, 852 (N.D. Ill. 2005)("Although §1962(d) of the RICO statute does not extraterritorial application, Fed. R. Civ. P. 4(k)(2) provides a mechanism for federal courts to assume jurisdiction over alien defendants," rejecting motion to dismiss by Canadian defendants in RICO case); *CGC Holding Co., LLC v. Hutchens,* 824 F. Supp. 2d 1193, 1199-1200 (D. Colo.)(same proposition). Although the Second Circuit has not specifically decided a RICO case in which jurisdiction was obtained under Rule 4(k)(2), at least one district court in this Circuit has recognized that it can apply to permit jurisdiction of a foreigner in a RICO action. *See In re U.S. Foodservice Inc. Pricing Lit.,*, 3:06-1657, 2009 WL 5064468, at *11 (D. Conn. Dec. 15, 2009).

So, the Defendants can be personally served in Venezuela if jurisdiction is permitted under the criteria of Rule 4(k)(2). It requires that jurisdiction must be "consistent with the United States Constitution and laws," *i.e*., the defendant has minimum contacts with the United

States and the defendant not be subject to the jurisdiction of any state. "Even for claims arising under federal law, the exercise of personal jurisdiction by federal courts under Rule 4(k)(2) is subject to limitations imposed by the Fifth Amendment Due Process Clause with respect to affiliating contacts and the requirements of fair play and substantial justice." 4B Charles Alan Wright and Arthur R. Miller, FED. PRAC. & PRO., Civ., at §1124 (4th Ed. 2018). *See also S.E.C. v. Straub,* 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013)("When the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal question and nationwide service of process, however, the Fifth Amendment applies, and the Second Circuit has consistently held that the minimum contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state"). The Response wrongly contends that "personal jurisdiction over [the Venezuelan Defendants] would be lacking if [Halvorssen] served them in Venezuela by traditional means." Response at 13. This ignores Rule 4(k)(2).

But regardless of whether service is accomplished in Venezuela or here on Defendants' counsel, jurisdiction can still be challenged pursuant to a Rule 12(b)(2) motion contending the lack of minimum contacts with the U.S. Betancourt has already done so. Court Doc. 37 at 2. So service of process, by itself, does not confer jurisdiction. The Response's statement that Halvorssen has told Judge Azrack that personal jurisdiction is obtained merely by service on counsel, Response at 13, is also wrong. The July 6th letter to Judge Azrack, Court Doc. 48 (fourth paragraph) addressed "Betancourt's minimum contacts with the United States," a necessary element to jurisdiction, which he is challenging pursuant to Rule 12(b)(2). If this Court allows alternative service on his lawyer, that challenge will remain, contrary to the argument the Response makes.

IV. CONCLUSION

Therefore, for the reasons stated herein, and in Plaintiff's Opening Brief, the Motion for Alternative Service on the Venezuelan Defendants should be allowed.

Dated: August 20, 2018                         Respectfully submitted,

/s/ Howard Foster

Howard Foster
Foster PC
150 N. Wacker Dr. Suite 2150
Chicago, IL 60606
(312) 726-1600
Attorney for Plaintiff, *pro hac vice*

Carlos Javier El-Hage Guaristi
1 West St., Suite 3501
New York, N.Y. 10004
(917) 514-9895
Javier@ElHagepllc.com
E.D.N.Y. Bar #CG6719

Attorney for Plaintiff