**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

| | |
|---|---|
| THOR HALVORSSEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. CV 18-2683-JMA-AYS |
| v. | ) |
| | ) **ORAL ARGUMENT** |
| GLENN SIMPSON, PETER FRITSCH, | ) **REQUESTED** |
| FRANCISCO D'AGOSTINO-CASADO, | ) |
| LEOPOLDO BETANCOURT-LOPEZ, PEDRO | ) |
| JOSE TREBBAU-LOPEZ, FRANCISCO | ) |
| CONVIT-GURUCEAGA, | ) |
| | ) |
| Defendants. | ) |

---------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS GLENN SIMPSON'S AND PETER FRITSCH'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**INTRODUCTION** ...................................................................................................................1

**BACKGROUND** ....................................................................................................................2

   **A.**    **Predicate Act One against Thor Halvorssen** .................................................3

   **B.**    **Predicate Act Two against William Browder** .............................................6

   **C.**    **Predicate Act Three against Aleksander Boyd** ...........................................7

**ARGUMENT** ...........................................................................................................................8

   **I.**    **APPLICABLE STANDARDS OF LAW** ...................................................8

   **II.**    **PLAINTIFF FAILS TO PLAUSIBLY PLEAD A PREDICATE ACT.** ...................9

   **A. Plaintiff Fails to Adequately Plead a Single Violation of 18 U.S.C. §§ 1513(e) & (f).**

   ...................................................................................................................10

   **B. Defendants Simpson's and Fritsch's Alleged Criminal Conduct Constitutes**

   **Protected First Amendment Activity.** ..................................................16

   **III.**    **PLAINTIFF FAILS TO ADEQUATELY PLEAD A RICO VIOLATION.** ...........19

   **A.**    **Plaintiff Fails to Plead a "Pattern" of Racketeering Activity.** .............19

   **B.**    **Plaintiff Fails to Adequately Plead Either a Cognizable Injury, or That Such**

   **Injury Was Proximately Caused by the Alleged RICO Violation.** .................22

   **CONCLUSION** .......................................................................................................24

## TABLE OF AUTHORITIES

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)..............................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)................................................8

*Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015)..............................................8

*Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000) ...................17

*Chandok v. Klessig*, 648 F. Supp. 2d 449, 458 (N.D.N.Y. 2009) ...............................17

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) ..............4

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*,
    758 F. Supp. 2d 153, 171 (E.D.N.Y. 2010)...........................................................14

*DeFalco v. Bernas*, 244 F.3d 286, 320 (2d Cir. 2001) ..............................................20

*Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396, 412 (E.D.N.Y. 2013) ..........10

*Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 140 (2d Cir. 2018)............23

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004)...........10

*Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017)...................9

*Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009) ............................4

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) ..........................................19

*Halvorssen-Mendoza v. Betancourt Lopez, et al.*, No. 13-036379 (Fla. 11th Cir. Ct.
    June 27, 2016), attached at Exhibit 1 ....................................................................1

*Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 10-12 (2010)...........................23

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50-51 (1988) ...................................18

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) ...........9

*Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008) ...........................................10

*Kucher v. Alternative Treatment Ctr. of Paterson, LLC*, No. 05-CV-3733 SJ JMA,
    2009 WL 1044626, at *6 (E.D.N.Y. Mar. 27, 2009)..............................................10

*Lerman v. Flynt Distrib. Co., Inc.*, 745 F.2d 123, 136-37 (2d Cir. 1984) ...................17

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ......................10

*Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) ............8

*Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir.1991) ...................................9

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) ...................................10

*Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 264 (1994) ............................16

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v.
    Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013).........................8

*Reich v. Lopez*, 38 F.Supp. 3d 436, 444 (S.D.N.Y. 2014)...........................................13

*Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017)........................................................19

*Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)................................................15

*See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991).......................1

*Siddique v. Anwar*, No. 15CV4278DLIRML, 2017 WL 8776968, at *5
    (E.D.N.Y. Dec. 8, 2017) ......................................................................................9

*Snyder v. Phelps*, 562 U.S. 443, 453 (2011)............................................................18

*Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015) ..................................................9

*Spiteri v. Russo*, No. 12-CV-2780 MKB RLM, 2013 WL 4806960, at *45
    (E.D.N.Y. Sept. 7, 2013) .....................................................................................9

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) ..........8

*Taylor v. Darcy*, No. 16CV6465JMASIL, 2018 WL 4268910, at *7
    (E.D.N.Y. Aug. 13, 2018) ....................................................................................10

*U.S. v. Draper*, 553 F.3d 174, 181-82 (2d Cir. 2009................................................13

*UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 132 (2d Cir. 2010) ....................23

*United States v. Brown*, 937 F.2d 32, 36 (2d Cir. 1991) ..................................................................12

*United States v. Cassidy*, 814 F. Supp. 2d 574, 583 (D. Md. 2011) ................................................18

*United States v. Cremeans*, No. 209CR0022204, 2010 WL 3743895, at *4–5
  (S.D.W.Va. Sept. 17, 2010) ..........................................................................................................11

*United States v. Denham*, 663 F. Supp. 2d 561, 564-65 (E.D. Ky. 2009) .......................................12

*United States v. Sanchez*, 615 F.3d 836, 845 (7th Cir. 2010) ..........................................................13

*United States v. Sergentakis*, No. 15 CR 33 NSR, 2015 WL 3763988, at *4
  (S.D.N.Y. June 15, 2015) .............................................................................................................19

*United States v. Sessa*, 125 F.3d 68, 71 (2d Cir. 1997) .....................................................................9

*United States v. Stoker*, 706 F.3d 643, 646 (5th Cir. 2013) .............................................................11

*Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123-24 (2d. Cir. 2018) .........................................10

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 519
  (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) ..........................................................23

*Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, No. 14-CV-7349 (AJN),
  2016 WL 1298987, at *12 (S.D.N.Y. Mar. 31, 2016) ..................................................................22

## INTRODUCTION

Plaintiff Thor Halvorssen, a "frequent commentator" in the media on "corruption and human rights violations," particularly in his native Venezuela, Compl. ¶¶ 14-15, claims that in September 2015, the journalist Kenneth Silverstein ("an avowed supporter of the [Hugo] Chavez regime" in Venezuela) published an online article and some social media postings containing "charges" about him that allegedly led to Halvorssen suffering financial injuries. *See id.* ¶¶ 32-33 & 36. In reaction to Silverstein's publication, Plaintiff filed a defamation suit in Florida. The defamation case was dismissed without prejudice for lack of service and personal jurisdiction. *See* Order Denying Motion to Amend: *Halvorssen-Mendoza v. Betancourt Lopez, et al.*, No. 13-036379 (Fla. 11th Cir. Ct. June 27, 2016), attached to this brief at Exhibit 1.[1] Halvorssen chose not to proceed with his defamation claim within the applicable statute of limitations.

Plaintiff struggles to recycle his time-barred defamation case into an imaginary criminal conspiracy to retaliate against him, under 18 U.S.C. § 1513. By cobbling together a hodgepodge of unrelated, implausible and factually unsupported predicate acts, Plaintiff tries to punish Defendants Glenn Simpson and Peter Fritsch, whom he incorrectly suspects were behind Silverstein's publication, by suing them in a bankrupt RICO conspiracy complaint. In so doing, Plaintiff has failed to plead a single, plausible predicate act under RICO, has failed to show that Defendants conspired to engage in a pattern of racketeering activity, and has failed to plausibly establish standing to sue under RICO. Indeed, his Complaint cannot make out either a violation of 18 U.S.C. § 1513 or a RICO conspiracy case from his failed defamation action, and should be dismissed with prejudice.

---

[1] The Court may take judicial notice of and consider pleadings and court filings neither incorporated by reference in a complaint nor attached to a complaint, when reviewing a motion to dismiss, without converting that motion to dismiss into a motion for summary judgment. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991).

First, the Complaint fails to plausibly plead predicate acts – *i.e.*, violations of 18 U.S.C. § 1513(e) or (f), which make it a crime to "knowingly" retaliate, or conspire to retaliate, against government witnesses. Most notably, Plaintiff alleges that it was the action of a corporate board against one of the co-defendants – not any reporting to law enforcement – that prompted the conspirators to retaliate against him. In the case of the alleged predicate acts of retaliation against William Browder and Aleksander Boyd, the Complaint also fails to plausibly allege knowing retaliation or intentional harm. Importantly, Defendants Simpson's and Fritsch's alleged criminal conduct – *i.e.*, providing negative information to the news media about public figures – is protected speech under the First Amendment and thus cannot be criminal.

Second, Plaintiff has failed to plead a RICO conspiracy. The complaint's attempt to string together three disparate predicate acts allegedly directed at three different individuals, involving three unique sets of facts, and occurring in three unique time periods, fails to plead the "relatedness" or "continuity" required to state the "pattern of racketeering activity" required for a valid RICO conspiracy claim.

Third, Plaintiff fails to establish standing because his only potentially cognizable injury of a lost prospective contract was neither proximately caused by any alleged predicate act nor alleged to have been the intended objective of the conspiracy, but instead was the direct result of non-racketeering action voluntarily taken alone by a third party.

For all of these reasons, Plaintiff's complaint should be dismissed with prejudice.

## BACKGROUND

Two years ago, in Florida, Plaintiff Halvorssen filed an unsuccessful defamation case against Defendants Francisco D'Agostino-Casado, Leopoldo Betancourt-Lopez, Pedro Jose Trebbau-Lopez ("the Venezuelans") arising out of the same salient acts alleged before this Court: namely, the posting of negative information about him by Kenneth Silverstein. *See* Order Denying

2

Motion to Amend: *Halvorssen-Mendoza v. Betancourt-Lopez, et al.*, No. 13-036379 (Fla. 11th Cir. Ct. June 27, 2016), attached to this brief at Exhibit 1. Plaintiff now burdens Defendants Simpson and Fritsch with this reconstituted defamation lawsuit. In doing so, Plaintiff claims the company owned by Defendants Simpson and Fritsch, Bean LLC (doing business as Fusion GPS), is a RICO enterprise, *see* Compl. ¶ 76, and that Defendants Simpson and Fritsch conspired with Silverstein and the Venezuelans, in violation of the RICO conspiracy statute, to publish the Silverstein defamation as a means of retaliating against Plaintiff for being a whistleblower to law enforcement. But the Complaint does not, and cannot, plausibly allege that Defendants Simpson and Fritsch retaliated against Plaintiff for providing information about a federal offense to U.S. law enforcement. Also, Plaintiff's allegations of a RICO conspiracy amount to nothing more than a house of cards assembled from three distinct alleged episodes (only one of which allegedly affected him), in which Defendants Simpson and Fritsch supposedly provided negative information to the news media.

## A. Predicate Act One against Thor Halvorssen

As for the first alleged retaliatory scheme, Plaintiff Halvorssen describes himself as "an outspoken and continuous critic of corruption in his native Venezuela," Compl. ¶¶ 1-2, who became a shareholder of Harvest Natural Resources, Inc. ("Harvest") "to engage in anti-corruption activism." *Id.* ¶ 15. The Complaint claims Halvorssen wrote Harvest's board, on August 6, 2015, to raise questions about *Harvest's* possible exposure under the Foreign Corrupt Practices Act ("FCPA"), purportedly because of the conduct of one of its putative board members, Francisco D'Agostino, and Derwick Oil and Gas ("Derwick"), a Barbados company of which D'Agostino was a shareholder and owner. *Id.* & Ex. A.

In the first and last paragraphs of his August 6, 2015 letter ("the Harvest letter"), Plaintiff made plain the Harvest letter's purpose: to "urge the Board to reconsider its recommendation that

the shareholders approve the CT Energy Transaction" and to "carry out an independent investigation to determine … whether Francisco D'Agostino is fit to serve on the board." Ex. A at 1-2.[2] In support of these points, the Harvest letter presented allegations that D'Agostino and Derwick "stand accused of engaging in illegalities in Venezuela in the construction of power plants, and of siphoning more than one billion dollars intended to build the power plants into bank accounts" in various countries, including the United States. Ex. A at 1. The Harvest letter then cited to a *Wall Street Journal* article that had already reported on the fact that Derwick was under investigation by the U.S. Department of Justice, among others, and reminded the Harvest Board that D'Agostino is a defendant in a lawsuit brought by a former State Department official, Otto J. Reich, "alleging corruption in Venezuela." *See id.* at 1-2.[3]

Halvorssen did not write separately to, or meet with, U.S. law enforcement officers and instead merely copied them on his letter to Harvest. *See* Compl. ¶ 20; Ex. A at 2. The Complaint alleges that Halvorssen followed up with other Harvest shareholders about his concerns on multiple occasions, *see* Compl. ¶ 15, but it does not allege that he ever subsequently contacted U.S. law enforcement.

Accordingly, "as a result of Halvorssen's efforts," alleged co-conspirator D'Agostino "was forced to resign from the Harvest board of directors." *Id.* ¶ 16. It was *this* action, the Complaint alleges, that spawned D'Agostino and the other defendants into retaliatory action. Per the

---

[2] As Plaintiff attached the letter to the Complaint and incorporated the letter into Plaintiff's allegations, the Court can and should consider the letter on a motion to dismiss for failure to state a claim. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (finding that a court may take into consideration a document that is critical to the judgment and is either attached to the complaint or incorporated by reference, when deciding a defendant's motion to dismiss, without converting the motion into one for summary judgment).

[3] The Court can take judicial notice of the *Wall Street Journal* article(s) incorporated by reference in the Harvest letter and likewise can take them into consideration on a motion to dismiss, without converting it into a motion for summary judgment. *See Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009) (finding judicial notice of newspaper articles appropriate when reviewing a motion to dismiss). The *Wall Street Journal* articles are attached to this brief at Exhibit 2 & 3. *See* José de Córdoba, *Suit Alleges Graft in Venezuelan Contracts*, WALL ST. J., Jul. 31, 2013, at Exhibit 2; José de Córdoba & Christopher M. Matthews, *Venezuelan Energy Company Investigated in U.S.*, WALL ST. J., Aug. 8, 2014, at Exhibit 3.

Complaint: "In August 2015, D'Agostino discussed Halvorssen's letter with the other Venezuelans by telephone from his home in Southampton, New York. Incensed about the Harvest Natural Resources fiasco and afraid Halvorssen would continue his efforts to expose the Derwick bribes" in Venezuela, "[D'Agostino] insisted [the Venezuelans] take immediate action." *Id.* ¶ 24. The Complaint alleges that the Venezuelan defendants then "agreed to engage Fusion GPS … to undertake an effort to smear Halvorssen." *Id.* ¶ 25. Critically, the Complaint does not allege, because it cannot, that anyone at Fusion GPS, let alone Defendants Simpson and Fritsch, ever knew that Halvorssen had provided information of any kind to law enforcement, and it certainly does not allege, because it cannot, that Defendants Simpson and Fritsch knew he had provided information about a federal offense to U.S. law enforcement, if he ever did.

The smear allegedly consisted of compiling a "dossier" on Halvorssen that Defendants Simpson and Fritsch gave "to a longtime friend and associate, Washington journalist Kenneth M. Silverstein," and asking Silverstein to "turn the dossier into a devastating profile of Halvorssen and publish it online." *Id.* ¶¶ 29-32. The Complaint alleges that Silverstein is "an avowed supporter of the Chavez regime." *Id.* ¶ 32. According to the Complaint, Silverstein published a "profile" of Halvorssen online, in September 2015, on an obscure website called Shadowproof.com, after another website called Byline.com had taken down the article, *id.* ¶¶ 34-36. It is clear from the September 2015 Shadowproof.com article (attached to the Complaint) that the pro-Chavez Silverstein had been reporting on the anti-Chavez Halvorssen for "[s]everal months," long before the August 2015 Harvest letter was sent and thus long before the alleged retaliation scheme began. *Id.* Ex. B. In the Shadowproof.com article, Silverstein also disclosed his anti-Halvorssen, pro-Chavez bias. *See id.* Ex. B ("I really and truly don't like Thor Halvorssen."); *id.* ("[L]et me happily confess that I have loved Hugo Chavez since 1993…."). Despite the disclosure of Silverstein's biases, the Complaint alleges that the "goal" of the alleged retaliation "was to get Halvorssen fired

5

as President of the Human Rights Foundation," Compl. at 1, which, he alleges, "focus[es] on …

exposing the enablers of dictatorships … and the disruption of authoritarian regimes," such as the

Hugo Chavez dictatorship in Venezuela. *Id.* ¶ 13. The Complaint concedes that the Foundation did

not fire him. *Id.* ¶ 49.

Plaintiff alleges that after finding this Shadowproof.com article online, he lost unspecified

speaking fees, and a venture capital firm called Social Impact Capital cancelled a "prospective

contract" with him. Compl. ¶ 49. The Complaint concludes, without citing any specifics, that

Social Impact Capital decided not to do business with Halvorssen solely on the basis of the

Silverstein article posted on Shadowproof.com. *See id.* Tellingly, Halvorssen did not allege the

loss of this "prospective contract" in 2016, when he unsuccessfully moved for leave to amend his

Florida complaint to include allegations of defamation against the Venezuelans for, *inter alia*, their

alleged role with regard to the Silverstein article. *See* Plaintiff's Motion for Leave to File Second

Amended Complaint: *Halvorssen-Mendoza v. Betancourt-Lopez, et al.*, No. 13-036379 (Fla. 11th

Cir. Ct. April 4, 2016), at Proposed Second Amended Complaint, ¶¶ 153-164, attached to this brief

at Exhibit 4.

## B.  Predicate Act Two against William Browder

The second alleged retaliatory scheme has zero to do with the Venezuelans or Plaintiff.

The alleged victim of this scheme is William Browder, "an American-born British citizen" and

"for many years the largest foreign investor in Russia," who then became "a world renowned anti-

corruption campaigner." Compl. ¶ 50. The Complaint alleges that Browder reported "money

laundering" by Prevezon Holdings Ltd. ("Prevezon") to U.S. Immigration and Customs

Enforcement, that the U.S. Government then began a civil forfeiture proceeding against Prevezon,

a civil action, *id.* ¶ 57, and that, in defense of this lawsuit, Prevezon's lawyer "hired Fusion GPS"

and "ordered Simpson and Fritsch to investigate Browder, assemble a dossier on him, and use the

dossier to retaliate against him for his reporting Prevezon's crimes to the U.S. authorities" by disseminating the dossier "in journalistic circles." *Id.* ¶¶ 59-61. The Complaint's conclusory allegation that Defendants Simpson and Fritsch were "ordered … to retaliate against [Browder] for his reporting Prevezon's crimes to the U.S. authorities," *id.* ¶ 60, is belied by the Complaint's more specific allegations that Prevezon's lawyer retained Defendants Simpson and Fritsch solely to assist her representation of clients impacted by the civil action filed by the U.S. government against Prevezon. *See id.* ¶ 59.

The Complaint does not allege that either the Venezuelans or Silverstein played any role in the Browder retaliation, and it does not plausibly allege intentional harm to Plaintiff or Browder. To the contrary, the Complaint alleges that the settlement of the civil action against Prevezon "vindicat[ed]" Browder. *Id.* ¶ 65.

### C. Predicate Act Three against Aleksander Boyd

This last alleged retaliation scheme has nothing to do with Plaintiff or Browder.  The Complaint alleges, in a wholly conclusory fashion, that Aleksandr Boyd, "a prominent journalist reporting on corruption and human rights violations," is "the single most significant adversary Derwick has encountered in the media," that he "focused heavily on the Venezuelans and Derwick, reporting their kickbacks for energy contracts and their other financial illegal activities in the oil and gas space as well as their financial shenanigans in the United States," and that he "published and widely reported his findings to U.S. government officials." *Id.* ¶ 66.

As with Plaintiff Halvorssen, the Complaint does not allege that Defendants Simpson and Fritsch knew that Boyd had provided information to US law enforcement about "financial shenanigans in the United States." *Id.* Rather, Defendants Simpson and Fritsch are simply alleged to have "produced a 'dossier' that would serve as a template for smear articles that would ruin Boyd's livelihood," *id.* ¶ 70, without any specific factual allegations about who Defendants

Simpson and Fritsch contacted, who wrote the articles, where and when they were published, or how the defendants intended to harm Boyd.

## ARGUMENT

### I.   APPLICABLE STANDARDS OF LAW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). Pleading a "mere possibility of misconduct" is not sufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the complaint should be dismissed. *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679). While the court must approach the complaint in a light most favorable to the plaintiff, "'naked assertions' or 'conclusory statements' are not enough," *Biro*, 807 at 544 (quoting *Iqbal*, 556 U.S. at 678); *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Pleadings that are no more than conclusions ... are not entitled to the assumption of truth.") (internal citations and quotations omitted) (*quoting Iqbal*, 556 U.S. at 678-79). "Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a

fishing expedition." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan*, 712 F.3d at 719 (citation omitted).

Importantly, "courts look with particular scrutiny at claims for a civil RICO, given RICO's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." *Spiteri v. Russo*, No. 12-CV-2780 MKB RLM, 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015). Civil RICO, which result in awards of treble damages and attorney's fees for successful plaintiffs, has been described as an "unusually potent weapon—the litigation equivalent of a thermonuclear device." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (quoting *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 44 (1st Cir.1991)). Yet "although civil RICO may be a 'potent weapon,' plaintiffs wielding RICO almost always miss the mark." *Flexborrow LLC v. TD Auto Fin. LLC,* 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017).

## II.     PLAINTIFF FAILS TO PLAUSIBLY PLEAD A PREDICATE ACT.

To state a claim of RICO conspiracy, under 18 U.S.C. § 1962(d), a plaintiff must allege "the existence of an agreement to violate RICO's substantive provisions." *Id.* (quoting *United States v. Sessa*, 125 F.3d 68, 71 (2d Cir. 1997) (internal quotation marks omitted). "A claim under § 1962(d) based on a conspiracy to violate the other subsections of § 1962 necessarily must fail if the substantive claims are themselves deficient." *Siddique v. Anwar*, No. 15CV4278DLIRML, 2017 WL 8776968, at *5 (E.D.N.Y. Dec. 8, 2017). Consequently, even though Plaintiff "does not make a separate claim alleging a substantive RICO violation, [the Court] must nonetheless determine whether the plaintiff has adequately pleaded a substantive RICO

violation supporting the claim of RICO conspiracy." *Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008).[4]

 To state a claim under 18 U.S.C. § 1962(c), a plaintiff must show "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123-24 (2d. Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)).

### A. Plaintiff Fails to Adequately Plead a Single Violation of 18 U.S.C. §§ 1513(e) & (f).

 For each of his three predicate acts, Plaintiff attempts to plead a violation of 18 U.S.C. § 1513(e) or § 1513(f).

 Section 1513(e) provides:

> Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.

A violation of § 1513(e) thus requires proof that "(1) [the defendant] knowingly took an action with intent to retaliate; (2) [the defendant] harmed [the informant]; and (3) [the defendant's] retaliation was *spawned by* [the informant's] assistance to law enforcement." *United States v. Stoker*, 706 F.3d 643, 646 (5th Cir. 2013) (emphasis added) (upholding conviction of defendant

---

[4] "[A]ny claim under 1962(d) based on a conspiracy to violate the other subsections of 1962 necessarily must fail if the substantive claims are themselves deficient." *Kucher v. Alternative Treatment Ctr. of Paterson, LLC*, No. 05-CV-3733 SJ JMA, 2009 WL 1044626, at *6 (E.D.N.Y. Mar. 27, 2009), *report and recommendation adopted*, No. 05CV3733(SJ)(JMA), 2009 WL 1045989 (E.D.N.Y. Apr. 20, 2009) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993)). *See also First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) (citations omitted) (affirming dismissal of RICO conspiracy claim where the complaint did not adequately allege a substantive violation of RICO); *Taylor v. Darcy*, No. 16CV6465JMASIL, 2018 WL 4268910, at *7 (E.D.N.Y. Aug. 13, 2018), *report and recommendation adopted*, No. 16CV6465JMASIL, 2018 WL 4265908 (E.D.N.Y. Sept. 6, 2018) ("A complaint must adequately state a claim under 18 U.S.C. §§ 1962(a), (b), or (c) for a court to find a violation of 18 U.S.C. § 1962(d)."); *Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396, 412 (E.D.N.Y. 2013) (same).

who sent a threatening letter from prison to an informant, in which the defendant detailed his knowledge of the informant's reporting the defendant's criminal activity to the government).

Section 1513(f) provides: "Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." To establish a conspiracy to retaliate against a witness, the plaintiff must show "(1) that there was an agreement with one or other more persons, tacit or expressed, to undertake to violate" § 1513(e); "(2) that the accused willfully joined the conspiracy; and (3) the accused's intent was to accomplish the criminal purpose of the conspiracy." *United States v. Cremeans*, No. 209CR0022204, 2010 WL 3743895, at \*4–5 (S.D.W.Va. Sept. 17, 2010).

### 1. Plaintiff Halvorssen Pleads Himself out of Court for the Alleged Violations of §§ 1513(e) and (f) in His Case.

Instead of pleading that the alleged retaliation "was spawned by [the informant's] assistance to law enforcement," *Stoker*, 706 F.3d at 646, Plaintiff alleges a conspiracy to retaliate against him for having sent a letter to a corporate board of directors that resulted in the removal of Defendant D'Agostino from that board, which the complaint calls "the Harvest Natural Resources fiasco." Compl. ¶¶ 15, 16 & 24. Such allegations plead Halvorssen out of this Court.

The Complaint alleges:

> In August 2015, D'Agostino discussed Halvorssen's letter with the other Venezuelans by telephone from his home in Southampton, New York. Incensed about the Harvest Natural Resources fiasco and afraid Halvorssen would continue his efforts to expose the Derwick bribes, [D'Agostino] insisted [the Venezuelans] take immediate action.  In a series of calls over a few days, they agreed to engage Fusion GPS, which had been working for Derwick for more than one year, to smear Halvorssen.

Compl. ¶¶ 24-25. Thus, according to the Complaint, it was the action of Harvest forcing D'Agostino to resign (not any communications by Plaintiff to law enforcement) that "spawned" this alleged conspiracy, *Stoker*, 706 F.3d at 646. Accordingly, Defendants Simpson and Fritsch could never have intended to retaliate against Plaintiff "for" providing information of any kind to

law enforcement. 18 U.S.C. § 1513(e). "Congress did not seek to punish any retaliation for information; instead, Congress criminalized retaliation for information provided to federal officers." *United States v. Denham*, 663 F. Supp. 2d 561, 564-65 (E.D. Ky. 2009) ("The retaliatory intent must be *for* something, and the statute says the retaliation is *for* information provided to a law enforcement officer.") (emphasis in original). *See also United States v. Brown*, 937 F.2d 32, 36 (2d Cir. 1991) (finding that the statute requires proof that the defendant "acted knowingly, and with specific intent to retaliate against [the victim] for the information she divulged to federal authorities").

The Harvest letter was not only addressed to a *corporate board of directors* (not "a law enforcement officer"), but it was also allegedly written for the purpose of highlighting and preventing Harvest's possible exposure under the FCPA, not to report Derwick's FCPA violations to the government, which the Harvest letter itself alleged were already the subject of an ongoing federal investigation. *See* Compl., Ex. A at 1-2 (concluding that "it would be in the best interests of all shareholders … to determine whether the CT Energy Transaction may expose [Harvest] to unacceptable risk to its business and reputation"). Indeed, the Harvest letter references a *Wall Street Journal* article reporting that US law enforcement had already been investigating Derwick since August 2014. *See id.* (referencing the *Wall Street Journal* articles).[5] Copying law enforcement on a letter that indicates federal law enforcement is already investigating Derwick cannot be the basis for a Section 1513 violation. Especially given the contents of the Harvest letter,

---

[5] The *Wall Street Journal* reporting, referenced in the Harvest letter, is attached to this brief at Exhibits 2 & 3. *See* José de Córdoba, *Suit Alleges Graft in Venezuelan Contracts*, WALL ST. J., Jul. 31, 2013, at Exhibit 2; José de Córdoba & Christopher M. Matthews, *Venezuelan Energy Company Investigated in U.S.*, WALL ST. J., Aug. 8, 2014, at Exhibit 3. It is also worth noting that the Harvest letter simply repeats allegations that Plaintiff and another individual had *previously* made public, in court filings. *See, e.g.,* Halvorssen Aff. ¶ 2, *Halvorssen-Mendoza v. Betancourt-Lopez, et al.*, No. 13-036379 (Fla. 11th Cir. Ct. Jun. 15, 2015) ("Mr. D'Agostino admitted to me that illegal payments had been made to Venezuelan government officials."), at Exhibit 5; *Reich v. Lopez*, 38 F.Supp. 3d 436, 444 (S.D.N.Y. 2014) (stating that the complaint alleged Derwick had won Venezuelan government energy sector contracts "through the use of bribery and monetary kickbacks", *aff'd* 858 F.3d 55 (2d Cir. 2017).

it is insufficient for purposes of Section 1513 to allege nothing more than the fact such a letter was copied to a number of law enforcement officials. *See U.S. v. Draper*, 553 F.3d 174, 181-82 (2d Cir. 2009 (Sotomayor, J.) (reversing Section 1513 charges because the evidence did not show sufficient contact with a federal law enforcement officer where the victim provided information to local authorities about an individual and inferred it would be relayed to the federal law enforcement officer(s) present at the individual's interview); *cf. Brown*, 937 F.2d at 36 (finding sufficient evidence of contact with a law enforcement officer for purposes of Section 1513 because federal agents had interviewed the victim before the alleged retaliation).[6]

Lastly, the Complaint's theory of retaliatory intent is implausible – *i.e.,* that the conspirators sought to get Halvorssen "fired" as president of the anti-Chavez Human Rights Foundation by fomenting Silverstein ("an avowed supporter of the [Hugo] Chavez regime") to publish negative information. Compl. at 1 & ¶ 32. The Complaint alleges that the "core programs" of the Human Rights Foundation ("the Foundation) "focus on … exposing the enablers of dictatorships … and the disruption of authoritarian regimes," such as those of Hugo Chavez in Venezuela. *Id.* ¶ 13. It is therefore implausible that the Defendants would intend to persuade the anti-Chavez Foundation to take action against its anti-Chavez president, Thor Halvorssen, because of something the transparently pro-Chavez partisan Kenneth Silverstein would post on an obscure website, Shadowproofcom. *Id.* Ex. B ("[L]et me happily confess that I have loved Hugo Chavez since 1993…."). It makes no sense that the Foundation would ever take seriously the writings of Silverstein, whose only criticism of Hugo Chavez in the Shadowproof.com article was that Chavez

---

[6] Plaintiff also fails to allege that Defendants Simpson and Fritsch "knowingly" retaliated against him under Section 1513(e) because the complaint does not allege that they were even made aware of the Harvest letter or otherwise knew that Halvorssen had provided any information to a US law enforcement officer. *See United States v. Sanchez*, 615 F.3d 836, 845 (7th Cir. 2010) (vacating conviction under § 1513(e) because there was no evidence that the defendant even knew the victims had been witnesses and thus insufficient evidence that the defendant retaliated against the victims for their testimony).

should have been more ruthless. *See id.* ("I wish Chavez had been more like the great Union General William Sherman, who during the Civil War literally torched the South, killed countless enemy soldiers and civilians, and thereby broke the back of the Confederacy.") Additionally, Silverstein disclosed a clear bias against Halvorssen. *See id.* ("I really and truly don't like Thor Halvorssen."). It is no wonder the Complaint concedes that the Foundation did not fire him. *Id.* ¶ 49.

### 2. Plaintiff's Allegations about Browder and Boyd Do Not Constitute Violations of Sections 1513(e) and 1513(f) Either.

As to the allegations regarding Browder, Defendants Simpson's and Fritsch's work was alleged to have been performed at the direction of counsel, in defense of counsel's client in civil litigation, *see* Compl. ¶¶ 59-60, and thus cannot form the basis for a RICO predicate because "persuasive authority in this and other jurisdictions suggests that … litigation activities . . . cannot properly form the basis for RICO predicate acts." *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 171 (E.D.N.Y. 2010) (rejecting the mailings of "litigation documents" as the basis for RICO predicate acts because they were "litigation activities") (citing cases), *aff'd*, *Curtis v. Law Offices of David M. Bushman, Esq.*, 443 F. App'x 582 (2d Cir. 2011).

With regard to Boyd, the Complaint does not allege that Defendants Simpson and Fritsch knew of Boyd's alleged disclosures to the federal government, much less that Defendants Simpson and Fritsch were motivated by those disclosures to engage in any alleged retaliatory conduct. Indeed, the Complaint does not plausibly allege any specific facts showing what Boyd ever communicated to US law enforcement (instead opaquely saying that he did), much less whether, how, and when Defendants learned of Boyd's supposed disclosures to the federal government. Each allegation concerning Boyd is a mere conclusion. Thus, the complaint fails to plausibly allege that any conduct by Defendants Simpson and Fritsch was "spawned by" Boyd's disclosures. *Stoker*, 706 F.3d at 646; *see Sanchez*, 615 F.3d at 845; *Lundy*, 711 F.3d at 113 (dismissing

complaint because its "allegations supply nothing but low-octane fuel for speculation, not the plausible claim that is required").[7]

Nor does the Complaint allege that Boyd ever provided information about a "federal offense" to law enforcement.  Instead, the complaint alleges that Boyd "has focused heavily on the Venezuelans and Derwick, reporting their kickbacks for energy contracts and their other financial illegal activities in the oil and gas space as well as their financial shenanigans in the United States." Compl. ¶ 66. A vague allegation of "financial shenanigans in the United States" is insufficient to satisfy the pleading requirements under Section 1513(e). The Complaint then amorphously adds: "Boyd published and widely reported his findings to U.S. government officials," *id.*, but the complaint does not specify what "his findings" were or to whom they were reported.[8]

---

[7] Similarly, the Complaint does not plead, with specificity, that Defendants Simpson and Fritsch were retained to retaliate against Browder because he was a government witness.  Instead, the Complaint alleges, in conclusory fashion, that Defendants Simpson and Fritsch were "ordered … to retaliate against [Browder] for his reporting Prevezon's crimes to the U.S. authorities." Compl. ¶ 60.  But that vague allegation is belied by the Complaint's more specific allegations that Prevezon's lawyer retained Defendants Simpson and Fritsch solely to assist her representation of clients impacted by the civil action filed by the U.S. government against Prevezon. *See id.* ¶ 59. Indeed, these well pleaded facts render the Complaint's conclusory allegations implausible; they should not be accepted as true. *See Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) (stating that the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations.").

[8] Lastly, the Complaint does not allege that Defendants' conduct ever harmed Browder or Boyd, a required element of § 1513(e). *Stoker*, 706 F.3d at 646 (requiring the government prove that the defendant "harmed" the informant).The Complaint uses the word "harm" in a conclusory allegation that Defendant Simpson "disseminated the information in this dossier in journalistic circles in 2015 and 2016 to harm Browder," Compl. ¶ 61, but it does not identify any specific facts that caused Browder harm. If any articles were published based on information in a "dossier" that Simpson allegedly "disseminated … in journalistic circles," *id.*, they are not identified, and there is no allegation that any of "Hermitage's investors … withdr[e]w their investments" because of the alleged dossier. *Id.* ¶ 60. Nor does the Complaint allege that Browder was even aware of, or suffered any harm from, either the statements Defendant Simpson allegedly made to journalists or Rinat Akhmetshin*, see id.* ¶¶ 62-63, or Defendants Simpson's and Fritsch's alleged "involve[ment] in the promotion" of a documentary. *Id.* ¶ 64. The Complaint's allegations concerning harm to Boyd also fail. The Complaint merely alleges, using the conditional tense, that Defendants Simpson and Fritsch "produced a 'dossier' that *would* serve as a template for smear articles that would ruin Boyd's livelihood," Compl. ¶ 70 (emphasis added), but Plaintiff does not allege that any Defendants took "any action harmful" to Boyd, or that they caused any such "smear articles" to be published, or that their conduct (including, but not limited to the "dossier") contributed to any of Boyd's negative press. In fact, when the Complaint addresses the source of Boyd's negative publicity, it does so entirely in the passive voice, without alleging any connection to Defendants. *See id.* at ¶ 71 ("Dozens of blogs and websites were published….").

**B.      Defendants Simpson's and Fritsch's Alleged Criminal Conduct Constitutes Protected First Amendment Activity.**

Even if the Court were to accept the conclusory statements and paltry facts of the Complaint regarding Defendants Simpson's and Fritsch's alleged conduct, their alleged actions are protected by the First Amendment and thus cannot violate 18 U.S.C. § 1513. "Conduct alleged to amount to … one of the … somewhat elastic RICO predicate acts may turn out to be fully protected First Amendment activity, entitling the defendant to dismissal." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 264 (1994) (Souter, J. concurring). This is just such a case.

The Complaint begins by expansively pleading that each of the alleged victims of the claimed retaliation was an outspoken partisan on matters of public concern.[9] Thus, the Complaint effectively acknowledges that all three of the alleged victims of Defendants' retaliation voluntarily sought and attained influence or prominence in matters of public concern.[10]

---

[9] Plaintiff characterizes himself as "a prominent human rights advocate" and "outspoken and continuous critic of corruption" in Venezuela who "has been interviewed hundreds of times on the subject." Compl. ¶ 1. According to the complaint, Plaintiff "has lectured widely" and participated in documentary projects about human rights violations and corruption in Venezuela, has testified before numerous political bodies, has written articles for widely distributed publications such as the *Wall Street Journal* and *New York Times*, and has commentated on television about human rights violations and "corruption around the world," including in Venezuela. *Id*. ¶¶ 2 & 14. Likewise, the complaint alleges that Aleksander Boyd was, at the time of the alleged retaliation, "a prominent journalist reporting on corruption and human rights violations" in Venezuela and elsewhere, and "has been widely published and quoted all over the world as an expert in corruption." *Id*. ¶ 66. Similarly, the complaint alleges that William Browder, the alleged victim of prior retaliation by Simpson and Fritsch, is a "world renowned anti-corruption campaigner," who "began a worldwide lobbying campaign" for the Magnitsky Act, which was enacted in the United States in 2012. *Id*. ¶¶ 51 & 54. The complaint states that Browder made public allegations that formed the basis of the U.S. Government's civil forfeiture proceeding against Prevezon. *Id.* ¶ 57.

[10] There can be little disagreement that Halvorssen, Browder and Boyd are limited purpose public figures. *See generally Celle v. Filipino Reporter Enters. Inc*., 209 F.3d 163, 176 (2d Cir. 2000). A limited purpose public figure is defined as an individual who:

> (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.

*Lerman v. Flynt Distrib. Co., Inc.*, 745 F.2d 123, 136-37 (2d Cir. 1984). Per the complaint, each invited public attention to his views about corruption through his writings, interviews, lawsuits and campaigning, voluntarily injected himself into the issue, and assumed a position of prominence on the issue, all while regularly appearing in the media. Each "has chosen and worked diligently in furtherance of a career where, through publication, entry into controversy and debate is expected." *Chandok v. Klessig*, 648 F. Supp. 2d 449, 458 (N.D.N.Y. 2009) (finding a research scientist accused of scientific misconduct was a limited issue public figure because scientific articles are "subject to robust

The Complaint then claims that Defendants Simpson and Fritsch retaliated against all three of these public figures by sharing with the news media information that called into question the credibility of their claims about matters of public concern, including information concerning their qualifications and character. *See* Compl. ¶¶ 32, 34-42; 61-62 & 70. The article and posts by Silverstein, alleged to have been fomented by Defendants Simpson and Fritsch and their so-called "dossier," challenged the credibility of Halvorssen's claims by, among other things, attacking his qualifications and character. *Id.* ¶ 34. The Shadowproof.com article is but one piece of a long-standing public debate and vetting of the Chavez regime, as the September 2015 article had resulted from "[s]everal months" of investigative reporting by the pro-Chavez Silverstein into the anti-Chavez Halvorssen. *Id.* Ex. B ("Several months back, in [Halvorssen's] only comment to me (Silverstein) for this article…."). Thus, Silverstein was working on this September 2015 story long before the Harvest letter was sent on August 6, 2015 and thus long before Defendants Simpson and Fritsch allegedly provided any information to Silverstein. Similarly, the alleged "dossier" about Browder and the alleged "dossier" about Boyd challenged their qualifications, motivations, and character. *Id.* ¶¶ 62, 70-71.

Such activity that "challenge[s] [a public figure's] character and qualifications"—the speech at issue here—is "protected speech" and cannot amount to a violation of § 1513. *United States v. Cassidy*, 814 F. Supp. 2d 574, 583 (D. Md. 2011) (dismissing indictment for cyberstalking because it was directed at protected speech: the Tweets and blog posts, "although in bad taste," concerned the character and qualifications of a well-known religious figure). Attacking Halvorssen's, Browder's and Boyd's claimed anti-corruption *bona fides* is speech about a "matter of political, social, or other concern to the community" and "is a subject of legitimate news

criticism," and she voluntarily chose to enter a career where debate and controversy about research was expected), *aff'd on other grounds,* 632 F.3d 803 (2d Cir. 2011).

interest" that is entitled to First Amendment protection regardless of its "inappropriate or controversial character." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (internal quotation marks and citations omitted) (holding that picketing activity, containing homophobic speech and other *ad hominem* attacks on the mourners, at the funeral of a slain, gay soldier cannot is protected under the First Amendment). "One of the prerogatives of American citizenship is the right to criticize public men and measures. Such criticism, inevitably, will not always be reasoned or moderate; public figures as well as public officials will be subject to vehement, caustic, and sometimes unpleasantly sharp attacks." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50-51 (1988) (finding that a nationally known minister and active commentator on politics and public affairs could not recover damages for intentional inflection of emotional distress caused by an "ad parody offensive to him, and doubtless gross and repugnant in the eyes of most," because it was protected speech) (internal quotation marks and citations omitted).[11]

Because Defendants Simpson's and Fritsch's alleged retaliatory conduct was protected by the First Amendment, the complaint should be dismissed for failure to plead predicate acts.[12]

---

[11] Were Plaintiff to have included alleged co-conspirator "Washington journalist Kenneth Silverstein," who wrote and published the articles about Plaintiff, as a defendant in this RICO lawsuit, Mr. Silverstein – as the alleged publisher – would have had standing to dismiss the matter under the D.C. Anti-SLAPP statute.  Likewise, were Plaintiff to have filed timely defamation actions against Defendants Simpson and Fritsch in Washington, D.C., where their business is located, for the same alleged conduct in this lawsuit, they would have been able to file a motion to dismiss under the D.C. Anti-SLAPP statute.

[12] In *United States v. Sergentakis*, No. 15 CR 33 NSR, 2015 WL 3763988, at *4 (S.D.N.Y. June 15, 2015), the court denied defendant's motion to dismiss the § 1513(e) charge as violative of the First Amendment because – unlike the circumstances here – the victim was not a public figure and the statements were personal attacks, not matters of public concern. Even then, however, the *Sergentakis* court called it "a close question." *Id.* Here, by contrast, the alleged victims are limited public figures, and the alleged "dossiers" allegedly concerned the *bona fides* of the claims being made by Halvorssen and Boyd regarding Venezuelan corruption and by Browder regarding the alleged defrauding of Russia or the United States. *See* Compl. ¶¶ 25-26, 33, 62, 64 & 70.

18

### III.   PLAINTIFF FAILS TO ADEQUATELY PLEAD A RICO VIOLATION.

#### A.  Plaintiff Fails to Plead a "Pattern" of Racketeering Activity.

Plaintiffs are required to plead a "pattern" of racketeering activity. "The Supreme Court has interpreted that phrase to require both that the RICO predicates pose a threat of continuous criminal activity and that they be related to each other." *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "Predicate crimes must be related both to each other (termed 'horizontal relatedness') and to the enterprise as a whole ('vertical relatedness')." *Reich*, 858 F.3d at 60-61. Horizontal relatedness requires that the predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J.*, 492 U.S. at 240.

Beyond the alleged participation of Defendants Simpson and Fritsch in the three alleged "schemes," the predicate acts are not related. *See Reich*, 858 F.3d at 62 ("The methods of commission, victims, and results of the predicate acts are all dissimilar and weigh against relatedness."). The three alleged schemes affected three different people. Plaintiff has no alleged role in two of the three predicate acts; nor does he claim to be affected by them. Each alleged scheme stems from different reasons – from responding to being removed from a corporate board to defending a client in civil litigation. Strangest of all is the alleged retaliation against Browder, which is wholly unrelated to the alleged schemes against Halvorssen or Boyd, the only commonality being the claimed involvement of Defendants Simpson and Fritsch. Neither Plaintiff nor the Venezuelans has any role in the allegations with regard to Browder.

Nor does the Complaint sufficiently allege continuity, because the complaint does not allege with any precision when the predicate offenses allegedly took place. "The continuity necessary to prove a pattern can be either 'closed-ended continuity,' or 'open-ended

continuity.'" *DeFalco v. Bernas*, 244 F.3d 286, 320 (2d Cir. 2001). To establish close-ended continuity, the plaintiff must show "a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months . . . do not satisfy this requirement." *Id.* at 321 (quoting *HJ*, 492 U.S. at 242). "Predicate acts separated by only a few months will not do . . . this Circuit generally requires that the crimes extend over at least two years." *Reich*, 858 F.3d at 60. Two "sporadic" or "isolated" events are not enough to constitute a pattern. *H.J.*, 492 U.S. at 239. "Although factors such as the number and variety of predicate acts and the number of participants may be germane to this showing, 'closed-ended continuity is primarily a temporal concept.'" *Spool*, 520 F.3d at 184 (quoting *Cofacrèdit,* 187 F.3d at 242).

Plaintiff fails to plead close-ended continuity. Taken together, the Complaint alleges only isolated events in July and November 2014, *see* Compl. ¶¶ 70, 71, and September and October 2015, *see id*. ¶¶ 34, 36, 38-42, and does not state with any specificity when the unrelated alleged retaliation against Browder occurred, *see id*. ¶ 61. Thus, the alleged pattern covers at most a period of little more than a year and certainly less than the required two years – *i.e.*, at its most generous, July 2014 to October 2015 (16 months). *See Spool,* 520 F.3d at 184 (finding a 16-month period insufficient to establish closed-ended continuity). Plus, even were the Complaint to have alleged when the alleged retaliation against Browder occurred, the allegations regarding Browder are unrelated to the other two alleged predicate acts and thus cannot help Plaintiff establish continuity.

Plaintiff's labored efforts to extend the time period to 2017 fail: Although Plaintiff claims that articles and social media posts about him were published between September 24 and October 2, 2015, *see id*. ¶¶ 34, 36, 38-42, and he has attempted to extend this alleged course of conduct by claiming that it continued to October 2017, when Silverstein posted on his blog about Plaintiff and Browder, *see id*. ¶¶ 46, 82, Plaintiff does not allege that Defendants Simpson and Fritsch had anything to do with Silverstein's October 2017 blog post. Notably, "the relevant period" "is the

time during which RICO predicate activity occurred, not the time during which the underlying scheme operated, or the underlying dispute took place." *Spool*, 520 F.3d at 184.

Regarding Browder, Plaintiff obliquely alleges that Defendant Simpson "disseminated the information in journalistic circles in 2015 and 2016[.]" Compl. ¶ 61. However, the Complaint pleads no facts to support that range of dates and does not specify when any of this totally unrelated alleged retaliation occurred. Regarding Boyd, the Complaint alleges that Defendant Fritsch traveled to Caracas in July 2014, and that Defendants Simpson and Fritsch "then produced a 'dossier.'" *Id*. ¶ 70. The complaint also alleges that "three professionals" burglarized Boyd's home on November 17, 2014, an isolated event. *Id*. ¶ 71. Therefore, Plaintiff has not provided any basis for the Court to conclude that Defendants Simpson's and Fritsch's alleged activities were anything but isolated or sporadic and did not extend over a substantial period of time. *See Spool*, 520 F.3d at 184 ("Since the Supreme Court decided *H.J. Inc.,* we have never held a period of less than two years to constitute a 'substantial period of time.'") (internal citation and quotation marks omitted).

The Complaint also fails to plead open-ended continuity, which requires the plaintiff to "show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *DeFalco*, 244 F.3d at 323 (2d Cir. 2001) (quoting *Cofacredit,* 187 F.3d at 242). "In assessing whether or not the plaintiff has shown open-ended continuity, the nature of the RICO enterprise and of the predicate acts are relevant." *Cofacredit*, 187 F.3d at 242**.** "Where the enterprise is engaged primarily in racketeering activity, and the predicate acts are inherently unlawful, there is a threat of continued criminal activity, and thus open-ended continuity." *Id.* at 242-243.  "However, where the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Id.* at 243.

The Complaint does not allege continued criminal activity, or that either Fusion GPS or Defendants Simpson and Fritsch are engaged primarily in racketeering activity. The Complaint is also devoid of any alleged facts showing that the purported predicate acts were Fusion GPS's or Defendants Simpson's or Fritsch's regular way of operating the business. The Complaint merely states that "smearing opponents of its clients seems to be Fusion GPS' regular way of doing business," ¶ 82, "but this is conclusory and unconnected to any specific factual allegations." *Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, No. 14-CV-7349 (AJN), 2016 WL 1298987, at *12 (S.D.N.Y. Mar. 31, 2016) (finding that the complaint did not plausibly allege open-ended continuity where it relied on a conclusory statement that "the RICO conspiracy 'continues to this day.'").

### B. Plaintiff Fails to Adequately Plead Either a Cognizable Injury, or That Such Injury Was Proximately Caused by the Alleged RICO Violation.

Plaintiff alleges that his injuries were indefinite "lost speaking fees" and the loss of "a *prospective* contract" with a venture capital firm. Compl. ¶ 49 (emphasis added). However, a "RICO plaintiff may not recover for speculative losses or where the amount of damages is unprovable." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 519 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009). Loss of entirely speculative "lost speaking fees" is not a cognizable injury under RICO.

Assuming *arguendo* that the alleged loss of a "prospective contract" is a cognizable injury, such injury was not "by reason of" the alleged RICO violation. 18 U.S.C. § 1964(c). "To sue under RICO, a plaintiff must [ ] establish that the underlying § 1962 RICO violation was 'the proximate cause of his injury.'" *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 140 (2d Cir. 2018) (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 132 (2d Cir. 2010)). Proximate cause requires the plaintiff to demonstrate a "'direct causal connection' between the predicate offense and the alleged harm." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1,

10-12 (2010) (noting that in the RICO context, proximate cause does not refer to the foreseeability of the harm to plaintiff, but rather to "the directness of the relationship between the conduct and the harm").

Plaintiff alleges that a separate entity, Social Impact Capital, decided to cancel a prospective contract with him. *See id.* The "direct cause" of Plaintiff's allegedly lost prospective contract is thus the non-racketeering conduct of a non-party, Social Impact Capital, taken without any prodding by any defendant. Even if Social Impact Capital "canceled" the "prospective contract" with Plaintiff because it found the Silverstein article online, Compl. ¶ 49, it was a decision that Social Impact Capital voluntarily made alone. The Complaint does not and cannot allege that Defendants ever communicated with Social Impact Capital or otherwise directed them in any way.

Furthermore, Plaintiff's theory of proximate cause is implausible. The allegation that Social Impact Capital decided not to do business with Plaintiff because of an article appearing on Shadowproof.com is highly implausible, given the obscurity of this website and the obvious, pro-Chavez, anti-Halvorssen bias shown in the article. *See* Compl. Ex. B ("I really and truly don't like Thor Halvorssen."); *id.* ("[L]et me happily confess that I have loved Hugo Chavez since 1993…."). This allegation is made all the more implausible by the fact that, according to the Complaint and the Silverstein article, Shadowproof.com published the Silverstein article only after Byline.com removed the article from its website. *See id.*; Compl. ¶ 35. It is also telling that Halvorssen never mentioned the loss of this "prospective contract" or Social Impact Capital, when moving the Florida court *in 2016* for leave to file his second amended complaint suing the Venezuelans for defamation because of the Shadowproof.com article, among other alleged publications. *See* Plaintiff's Motion for Leave to File Second Amended Complaint: *Halvorssen-Mendoza v. Betancourt-Lopez, et al.*, No. 13-036379 (Fla. 11th Cir. Ct. Apr. 4, 2016), attached to this brief at

Exhibit 4. The foregoing considerations expose the implausibility of Plaintiff's claim that Social

Impact Capital withdrew this "prospective contract" because of the Silverstein article.

## CONCLUSION

For these reasons, Plaintiff has failed to plausibly allege a violation of § 1962(d) with

respect to Defendants Simpson and Fritsch, and his complaint should be dismissed with prejudice.


Dated:  December 19, 2018                    Respectfully submitted,

                                             /s/   Joshua A. Levy
                                             Joshua A. Levy (*pro hac vice*)
                                             Rachel M. Clattenburg (*pro hac vice*)
                                             **CUNNINGHAM LEVY MUSE LLP**
                                             1401 K Street, NW, Suite 600
                                             Washington, DC  20005
                                             Tel: (202) 261-6564
                                             Fax: (202) 261-3608
                                             jal@cunninghamlevy.com
                                             rmc@cunninghamlevy.com

                                             Steven M. Salky (*pro hac vice)*
                                             **ZUCKERMAN SPAEDER LLP**
                                             1800 M Street, NW, Suite 1000
                                             Washington, DC 20036
                                             Tel: (202) 778-1800
                                             Fax: (202) 822-8106
                                             ssalky@zuckerman.com

                                             Shawn Naunton
                                             **ZUCKERMAN SPAEDER LLP**
                                             485 Madison Avenue, 10th Floor
                                             New York, New York 10022
                                             Tel: (212) 704-9600
                                             Fax: (917) 261-5864
                                             snaunton@zuckerman.com

                                             *Attorneys for Defendants Glenn Simpson and
                                             Peter Fritsch*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2018, I served the Notice of Motion and foregoing Memorandum of Law on all counsel of record, via e-mail.

/s/____*Joshua A. Levy*_____
Joshua A. Levy
**CUNNINGHAM LEVY MUSE LLP**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC  20036
Tel: (202) 261-6564
Fax: (202) 261-3608
jal@cunninghamlevy.com